CASE 44—PETITION EQUITY—SEPTEMBER 17.

## Delph, &c., vs. Delph, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

" *I leave my wife to have control of my estate as long as she remains my widow, or in case of her marrying or death, then I wish all my estate divided equally between all my children, Ann E. Hall, Sarah Jane Delph, Pauline, Martha, and Nancy Delph. I leave fifty dollars to my son, George M. Delph, as he has had more than his share. I hold his notes and amount to about $800, which I give to him in addition to the $50 above, and this is all he is to have of my estate.*" The above was dated in 1855. In 1856, the testator noticed a son who was wholly pretermitted in the will by a codicil, to-wit: " *From a long and troublesome trial with my son Edward and his disobedience towards me, I think it nothing just and right that I shall leave him just I have left George Delph. I leave him $50 as I have left George on the other side of this paper, and no more than George. I being in health at this time, deemed it expedient to add this codicil.*" In 1858, the testator added the following codicil, to-wit: " *What 1 leave to my daughter, Ann E. Hall, I leave to her and her children, if she should have any; and if she should never have any children, then, at her death, the property is to return to my other children*

Delph, &c., vs. Delph, &c.

*as above named."*  Mrs. Ann E. Hall survived the testator, and died childless.  *Held by the court*—That George and Edward Delph had no interest in the share of Ann E. Hall, and that the same passed under the will to the four other daughters named in the will.

HUNT & BECK,                                         For Appellants,

CITED—

*Wigram's Rules.*

1 *Greenleaf's Ev.*, sec. 287, *n.* 3.

KINKEAD & BUCKNER,                                   For Appellees.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

In the year 1855 Jeremiah Delph, of Fayette, published his will, disposing of his whole estate in the following manner: "I leave my wife to have control of my estate as long as she remains my widow, or in case of her marrying or death, then I wish all my estate divided equally between all my children, Ann E. Hall, Sarah Jane Delph, Pauline, Martha, and Nancy Delph. I leave fifty dollars to my son George W. Delph, *as he has had more than his share.* I hold his notes and amount to about eight hundred dollars, which I give to him in addition to the fifty dollars above, and *this is all he is to have of my estate.*"

In addition to the six children thus individualized, the testator had a son named Edward, who is still living, and seems to have been intentionally pretermitted.

But on the 17th of June, 1856, he is noticed in the following codicil: ":From a long and troublesome trial with my son Edward, and his disobedience towards me, I think it nothing just and right that I shall leave him just I have left George Delph. I leave him fifty dollars as I have left George on the other side of this paper, and no more than George. I being in health at this time, deemed it expedient to add this codicil."

And on the 13th of February, 1858, the testator added the following codicil: "What I leave to my daughter, Ann E. Hall, I leave to her and her children, if she should have any; and if she should never have any children, then, at her death, the property is to return to my other children as above named."

Mrs. Hall having survived the testator, and afterwards died childless, George and Edward Delph, each claiming as a devisee under the last codicil, assert that claim in this suit. The circuit court decided that neither of them is embraced in this codicil, and this court concurs in that judgment.

The whole testamentary document was unskillfully written by the testator himself, and this fact must be considered in the judicial interpretation of his pervading intent.

Having declared in his original will that his son George had already been advanced more than an equal share of his whole estate, and assigned that fact as the reason why, after bequeathing to him fifty dollars as a mere memorial, and the remission of his unavailing indebtedness of about eight hundred dollars, the testator excluded him from any further participation in his estate. He could have had no consistent motive for including that son in the last codicil, the same reason for his exclusion still existing in full force. And there being no proof or suggestion of Edward's reformation, his unfilial and hopeless conduct as a prodigal son, assigned as the reason for his pretermission in the original will, and for his association in the same category with George in the first codicil, must be presumed to have operated with unabated force on the testator's mind when he wrote the last codicil. Consequently, these sons cannot be

constructively embraced by this last codicil, if any other rational interpretation can be consistently given to it.

Had the testator changed his mind as to his two sons, we could not imagine why he did not say so expressly in the last codicil, and therein give to Edward an equal portion of his entire estate, instead of giving him, as his counsel insist that he intended, only a distributive and contingent portion of Mrs. Hall's interest; and, moreover, he could not consistently have given to George even that much without giving him more than any of his other children; *yet, if Edward be constructively embraced by the last codicil, George is as certainly* included also—he as much as Edward being one of the "children as named above."

The purpose and declared motives of the original will and of the first codicil are all perfectly consistent, and no other purpose having been ever intimated nor different motive being presumable, the whole context, properly considered, harmonizes and implies the same purpose and motive as to the appellants; and the literal import of the last codicil, instead of conflicting with this conclusion, fortifies it. If the testator, without any apparent motive, had intended to include the appellants in the last codicil, why did he not express that intention intelligibly and unambiguously ? And, instead of saying "the property shall *return* to my other children *as* above named," why did he not say that it should *go* to *all* his *surviving* children? The significant word "*return*," clearly indicates that the testator intended, that if Mrs. Hall should die childless, the property devised to her should *revert* to her surviving joint devisees, to whom he would have given it had they been the only daughters; or, in other words, that it should stand just as it would have stood had Mrs. Hall never existed. It could, in no other sense, *return*, nor to any other children, and especially the appellants, who never

had any interest in it which could return. And the word "*as*" is equally significant. It would have been altogether superfluous and delusive if the testator intended that "children" should include the appellants. Had such been his intention, he would have omitted "*as*," and said "my other children named above." But "*as* named above," means those who had been "named" co-devisees of it. "*As named above*," the appellants were excluded from that property, and "*as* named above," the four surviving sisters were, with Mrs. Hall, the only devisees of it. And, consequently, it could "*return*" only to them "*as* named above."

It seems to us, that apprehending that Mrs. Hall would never have a child to inherit her interest, the testator, anxious to exclude the appellants from any portion of it by inheritance, wrote the last codicil for the sole purpose of so limiting and disposing of her interest as to prevent that contingency, and secure the property to the descendants contemplated by the original devise; and therefore, instead of making the last codicil for the benefit of the appellants, the testator made it for their exclusion, either as devisees or heirs.

Wherefore, the judgment is approved and affirmed.