## Penick, Executor, etc. v. Lewis.

(Decided March 17, 1922.)

## Appeal from Green Circuit Court.

1. Wills—Intention of Testator.—The will of a testator is his intention, as expressed in the will, and it should be given effect, unless contrary to law or public policy.

2. Wills—Ambiguity—Construction.—If the language of a will is ambiguous, the circumstances surrounding the testator when the will was executed, such as the motive actuating the testator in making the will, the amount and character of his estate, and the relationship of the testator to the devisees, may be looked to in aid of the language.

3. Wills—Construction.—If the language of a will is susceptible of two constructions, the court will incline to that construction, which will put devisees, who bear the same relations to the testator, and who are equally objects of his bounty, and to whom he owes equal obligations of love and affection, upon a plane of equality under the will.

4. Wills—Disposition of Estate.—Regardless of what disposition a testator should make of his property, he is within his legal rights to make such disposition as he chooses, and the province of the court is to give effect to that disposition, when it is ascertained from the language made use of.

5. Wills—Value of Property Devised.—When a testator disposes of his entire estate by his will, the valuation placed upon property specifically devised to devisees, who are required to be charged with it, in the settlement of the estate, is the value at which it should be accounted for by the devisee, and in this, the rule is different to that provided by statute, in the distribution of undevised property, where a portion of the estate is devised, and a portion is undevised.

JEFF HENRY and J. H. GRAHAM for appellant.

MILBY & HENDERSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

This action was instituted by the appellant, Brummal Penick, as executor of the will of B. W. Penick, and in his own right as a devisee under the will, for a construction of certain provisions of the will, and for the advice of the chancellor, touching the distribution of the estate. There is nothing in the record which indicates the extent of the estate of the testator, except in a limited way, but

the record does develop that the testator, at the time of the making of the will, was surrounded by circumstances as follows:  He was a widower, having been twice married, but both of his wives were dead. It seems that there were no children of his last marriage, but he left surviving him as the offspring of his first marriage, two children, a son, who is the appellant, Brummal Penick, and a daughter, Mary P. Lewis.  The latter had been married, but an estrangement had arisen between her and her husband and they had been separated for some years prior to the time of the making of the will.  The testator had another son and daughter, beside these, as the fruits of his first marriage, but the daughter had long since been dead, leaving no children, while the son, who had died some years before his father, left surviving him a son, who was at the time of the making of the will, an infant. There were other grandchildren and great-grandchildren of testator, who were descendants of his surviving son and daughter, respectively.  All of his descendants are devisees under his will, but the controversy in this action relates only to the interest and rights of the two principal devisees, who are the appellant and appellee, the only two surviving children of the testator.  In the various clauses of the will, various devises of specific sums of money and specific articles of property were made to various devisees, including the trustees of two churches, his grandchildren and great-grandchildren, and other relatives, to the total sum of about $2,500.00, but there is no controversy about any of these devises, and the clauses containing them shed no especial light upon the question for decision here, and hence only the clauses of the will which create the interests of the son and daughter of the testator will be quoted.  The will was executed on July 21, 1916, and contained the following clauses relating to the son and daughter, so far as it is necessary to be considered:

"Item 5.   To my daughter, Mary P. Lewis, who has been so faithful and careful and loving to me, I give my brick storehouse in Greensburg, Ky., same deeded me by Levi M. Moore and wife, and charge her for same twenty-five hundred dollars, $2,500.00.  I also give her my one-tenth interest 1/10 in the brick storehouse on Sixth street in Louisville, Ky., and charge her for same $400.00. I also give her one-half of my household and kitchen fur-

niture, beds and bedding, tableware, bric-a-brac, silver, pictures, &c., left remaining after the said Edwina Hobson and Betty K. Alcorn have exercised their option under the devise made them in item 3rd of this will, and charge her for same $100.00.

"I also give her one full one-half of all my personal estate of every character which I may own in remainder.

. . . I also give her, not to be charged, all provisions I may have on hand.

"Item 6. To my son, Brummal Penick, I give and bequeath my land in Adair county, Ky., part of a former farm of my uncle, I. W. Ingram, deeded me by his widow, M. M. Ingram, containing about 60 acres, and charge him for same fourteen hundred dollars, $1,400.00. I also give him the land I own partly in Adair county and partly in Green, adjoining land of M. M. Ingram, Mr. Squires, Mr. Curry, Mr. Handy, and probably others, and charge him for same $400.00. I give him one-half of household effects, &c., as given my daughter, Mary P. Lewis, & charge him $100.00.

"I also give him such hogs as I may leave and charge for same $100.00.

"I also give him one-half of the remainder of my estate, in all making him and my daughter, Mary P. Lewis, equal in my estate, and do not want either of them charged with anything I may have given them in any way heretofore.

"Item 7. . . . I appoint Brummal Penick, my son, my executor for my estate, giving him full power to collect and settle such claims as I may have uncollected as he may deem best to collect the same, not desiring that he overpress any who may be owing me. I desire that he be not required to give bond, and direct that no inventory or appraisement be made of my estate, only I wish him to make his sister, Mary P. Lewis, from time to time a full showing of what may come into his hands, and disposition of same, and also direct that no compensation be allowed him for executing this trust, only his necessary expenses paid by him in connection with the estate."

On the 4th day of January, 1918, the testator added a codicil to the foregoing will, the portion of which that is pertinent to the issue here is as follows:

"By way of codicil to the foregoing will, I here add to and constitute a part of same, the following:

"The lands I devised to my son, Brummal Penick, in the foregoing will, I have since sold and hereby vacate said devise of land to him and cancel the charge made against him for same, and I here devise him, the said Brummal Penick, a tract of land in Adair county, Ky., bought by me of heirs and widow of W. A. Taylor, containing 49 3/8 acres, and charge him for same, $500.00."

On April 30, 1918, another codicil was added to the will, the pertinent portion of which is as follows:

"By way of codicil further to foregoing will, I state that since making foregoing codicil devising Brummal Penick 49 3/8 acres of land in Adair county, I have sold said land, and hereby set aside the devise and charge of $500.00 therefor."

The parties entered into a stipulation to the effect that the real estate which was devised to Mary P. Lewis was, at the time of the testator's death, of the value of $8,000.00, and agreed that the fact as stipulated could be considered as evidence.

The appellant averring (and this is undenied) that the testator at the time of his death, did not own any real estate, other than that which was devised to appellee, and that he did not receive any real estate under the will or otherwise, and further that there was devised to him and appellee, each, an equal portion of the estate, and there would be a sufficiency of the personalty, after the payment of specific devises and costs of administration, to equalize them, and being in doubt as to the construction to be placed upon the fifth and sixth clauses of the will, and the codicils, so far as they relate to the devises made to appellant and appellee, asked the chancellor to determine and advise him whether the testator intended that each of them should receive an equal portion of the estate, and in determining the amount which each of them should receive from the estate, whether appellee should be charged for the real estate devised to her the sums at which the testator valued it and charged it in the will, or should she be charged the value of it at the time of the testator's death.

The judgment was to the effect that the testator died testate as to his entire estate, real and personal, and that after the payment of certain specific devises, there was devised to the appellant and appellee, each, a full one-half of the remainder of his personal property without any

regard to equalizing them out of same, and for that reason, it was unnecessary to respond to the specific information desired. This, as we understand it, was to hold that the appellee would receive the storehouse in Greensburg, the one-tenth interest in the house in Louisville, and one-half of the contents of the dwelling house, without accounting to the estate therefor, and in addition thereto a one-half of the residue of the personalty; while appellant would receive one-half of the contents of the dwelling house and the hogs on hand at testator's death, for which he would not be required to account to the estate, and the other one-half of the residue of the personalty, thus giving to appellee the advantage in a distribution to the extent of $2,800.00, at the values fixed in the will, and of this judgment the appellant complains.

There were never any two wills alike, in as much as there were never two testators alike, with like estate and surrounding circumstances, and hence each will depends for its construction upon its own language, and the circumstances surrounding each testator, so far as they will shed light upon the language used. It is trite to say that the universally established principle for the construction of a will is to ascertain the intention of the testator, and to give effect to that intention, unless it is contrary to the established law, or an accepted public policy. Watkins v. Bennett, 170 Ky. 464; Bayless v. Prescott, 79 Ky. 252; Hegan v. Netherland, 141 Ky. 680; Patrick v. Patrick, 135 Ky. 307; Buschmeyer v. Klein, 139 Ky. 124, and innumerable others. The intention of the testator must be ascertained from the language in which he expresses that intention, and not from outside circumstances and facts from which a will might be manufactured or language, that might have been used, but was not. Bedford v. Bedford, 99 Ky. 284; Guthrie v. Guthrie's Exor., 168 Ky. 805; Shields v. Shields, 185 Ky. 249; Wickersham v. Wickersham, 174 Ky. 608. In ascertaining from the language used, the intention of the testator, the entire will must be considered, and if there be codicils, they are to be considered as a part of the will. Deppen's Trustee v. Deppen, 132 Ky. 755; Hannah v. Prewitt, 153 Ky. 310; Gray v. Garnett, 148 Ky. 34; Barber's Extr. v. Baldwin, 128 S. W. 1092. When there are ambiguous clauses or terms, to ascertain the proper interpretation of them, the motives which can be reasonably assigned to have actuated the testator, the purpose of his making the will, the rela-

tions existing between him and the devisees, and the nature and amount of the property embraced in the will or owned by the testator, may be appealed to, in aid of the language made use of in ascertaining the testator's intentions. Henry v. Henry, 81 Ky. 342; Reuling v. Reuling, 137 Ky. 637; Levy v. Leeds, 151 Ky. 56; Watkins v. Bennett, *supra*. Natural instincts induce the feeling that devisees who bear the same relationship to the devisor, and who are equally the natural objects of his bounty, and to whom he is equally obligated by ties of confidence and affection, will be treated by him upon terms of equality, and hence where the language of a will is susceptible of two constructions, the courts will incline to that construction which will place such devisees upon the plane of equality under the will. Thomas' Extr. v. Thomas, 33 K. L. R. 700; Munday v. Broaddus, 19 K. L. R. 441; Deppen's Trustee v. Deppen, *supra*. Bearing these rules, in mind, which have been formulated because reasonably supposed to assist in ascertaining the intention of the testator, it will be observed that in the instant case, the appellant and appellee, who are the principal devisees and principal objects of the testator's bounty, are a son and a daughter of the testator, equally near to him in affection and natural obligation, and are the only two devisees who bear that relation to the testator. He expresses, in his will, his love and affection for the daughter, and exhibits his confidence and regard for the son, by appointing him to the trust of executing his will, and requesting that no security be required of him to perform the trust, and that no publicity be required of him in its administration. Of course, the testator would have been within the province of his legal rights to have treated these two devisees with the greatest inequality, but in our opinion, he did not do so, and that his intention to make them equal in his estate was clearly expressed in his will. The testator's grandson, or son of his deceased son, who would naturally have received, under the will the portion of the estate to which his deceased father would naturally have been entitled, was given a comparatively small sum, but the testator was at considerable pains to explain that circumstance and to show the reasons why that he had dealt with justice toward that grandson, in the disposition of his property, in spite of the small sum given to him, and if the testator had considered that, he had made a glaring inequality between his daughter and his son,

upon the latter of whom he had imposed the duty of administering the estate, without compensation, it is scarcely to be accounted for, that he made no mention of the inequality or sought in any way to excuse it. In spite, however, of these suggestions, the actual disposition which the testator made of his property in his will, and not what he should have done, must be appealed to to determine the rights of parties under it, and of course the disposition will have to be adhered to, which was made; but the foregoing circumstances, most of which are apparent from the will, may be looked to in aid of the language which it must be conceded is not altogether as clear as it might have been. There are, however, outstanding provisions of the will which we think show the testator's intention, and enable the court to put into effect that intention within the language expressed, and within the terms of the will, in spite of certain dubious expressions.

When the testator gave the brick storehouse in Greensburg to appellee, he accompanied the devise with the language, "and charge her for same two thousand five hundred dollars, $2,500.00." The devise to her of his one-tenth interest in the house in Louisville is accompanied by the statement, "and charge her for same $400.00." The gift of one-half of the contents of his dwelling to her is with the accompanying condition, "and charge her for same $100.00." When he devised to her all of the provisions he had on hand, he was at pains to say "not to be charged." These terms show clearly that the testator understood their use, and indicate beyond question the purpose and intention of the testator, that the appellee should be required to account to his estate in a settlement and distribution of it, the sums at which the testator charged the devises, and that the language used was not a mere statement of what in his opinion was the valuation of the property mentioned. He furthermore devised the land in Adair county to appellant, and accompanied that devise with the words, "and charge him for same fourteen hundred dollars, $1,400.00." The land partly in Green and partly in Adair, he gave to appellant, accompanied with the words, "and charge him for same $400.00." He used similar language with reference to the devises to appellant of one-half of the household goods and the hogs, requiring that he be charged $100.00 for each of such devises. When testator sold the lands

given to appellant in the will, he, by codicil set aside the devises of the lands, and also was particular to cancel the charges made against appellant for them. In the same codicil, he devised to appellant another tract of land, but provided that he be charged $500.00 for it, and when testator sold it, he made a codicil for the purpose, among other things, to set aside not only the devise, but to remove the charge for same. If testator did not intend that his son and daughter should account for these specific devises made to each of them at the valuation placed upon the property, in the settlement and distribution of his residuary estate, why make against them any charge for them, or why provide that a charge should be made for certain ones, and no charge should be made for others, or why remove by codicils the charges made against the son for the lands when they were sold? Why place a valuation upon each of these devises, if no account was thereafter to be taken of them, and if a valuation was not necessary to make a settlement and distribution of the residuary estate, as intended by him? The will does not provide, that any of the numerous devisees, other than appellant and appellee, should be charged with the value of a devise, nor is any valuation placed upon any other property bequeathed by the will, and the conclusion is inescapable, that the value of the property specifically devised to appellant or appellee was placed upon it by the testator, because they were the residuary legatees, and in contemplation of a settlement and distribution of the residuary estate between them. In other words, each of them is required by the terms of the will to account for the property specifically devised to them, at the valuation fixed by the will. A charge always carries with it an accounting, and, in this instance, the residuary estate of testator is the only thing to be accounted with.

In addition to the force of the words, showing that the specific devises were to be accounted for to the residuary estate, as indicating, that the two residuary legatees should share equally in the estate, the testator makes use of the following significant language, in item 6, of his will. After devising to appellant the lands, half of the household effects, and hogs; the will says: "I also give him one-half of the remainder of my *estate* in all making him and my daughter, Mary P. Lewis, equal in my *estate,* and do not want either of them charged with anything I may have given them in any way heretofore."

This clause, in part relates, as it will be observed, to both appellant and appellee, and provides that neither should be charged, in a settlement of his estate with anything which he had given them, theretofore, which would indicate, that, inasmuch as he had required each of them to be charged with the property, specifically devised to them, in the will but did not intend them to be charged with any advancements, it was necessary for him to provide that no advancements be charged to either to carry out his intentions. That clause unmistakably shows, that it was the desire and intention of the testator, that his daughter and son should share equally in his estate. The words "remainder of my estate," as used in that clause, and the words "my personal estate of every character, which I may own in remainder" used in the fifth clause of the will with reference to the residuary devise to appellee, were evidently used and understood by the testator as meaning the same thing, although technically not of the same meaning. The evident meaning of the testator was, that he had disposed of all of his real estate by special devises, and certain of his personal estate, and what he intended to make the son and daughter the residuary devisees of, was the remaining portion of his estate. The latter clause of item 6, is not properly punctuated, by a comma after estate, in the first line or a dash between the words "estate" and "in" in the first line, but, the failure is evident, and the meaning is discernible, and that is, by the plan of the will, which the testator had adopted of charging the son and daughter, with the property he had specifically devised to each of them, and requiring them to account for it in a settlement and distribution of the residuary portion of the estate, he provided for them to share equally in his estate, which he desired and intended for them to do. If testator did not intend, that the settlement should be made as above indicated, he could not have declared as he did, that after making the special devises to the son and daughter, and devising to each of them one-half of the remainder of the estate they were thus made equal sharers in his estate; because he had specially willed to the daughter property of the value of $3,000.00, and to the son property of the value of only $2,000.00, and thereafter by codicil, the testator took away $1,800.00 in value from the son, but, did not change the will otherwise, so far as it related to the son and daughter, but, allowed the clause to remain, providing

that the plan of his will made the son and daughter equal sharers not in the residuary estate, but in "my estate." Hence, we conclude, that the intention of the testator was to devise to his son and daughter, each an equal portion of his estate, remaining, after the dispositions in his will to others had been satisfied, and that the equality would be made by the necessary adjustments upon equitable principles, governed by the plan provided for equality, by the testator in the will, and such adjustment is within the terms of the will.

In accounting for the property devised to the appellant and appellee, the amount fixed in the will to be charged for it should prevail. The sums, at which, they should account for the property is as much a part of the will, as any other part of it. The case is not, as one where a portion of the estate is undevised, and it is attempted to distribute the undevised portion so as to equalize persons not devisees, with those who are. In this instance, the entire estate is disposed of by the will, and the principles applying to arrive at equality where a portion of the estate is undevised, cannot be invoked since undevised estate is not disposed of under a will, but by the requirements of a statute, and since one claiming under a will can not at the same time claim against it. In determining the sum, which the appellant and appellee, each, should receive from the estate, the specific property received by them under the will, should be charged to him or her, at the sum fixed by the testator in the will. Duff v. Duff's Exor., 147 Ky. 641; Bowles v. Winchester, 13 Bush 16; Ecton v. Smith, 6 K. L. R. 216.

The judgment is therefore reversed and cause remanded, for proceedings not inconsistent with this opinion.