## Cummings v. Nunn.

May 12, 1942.

J. A. Flowers for appellant.

J. G. Smith for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—Affirming.

This case involves the construction of the holographic will of F. M. Ballenger, which is as follows:

> "Knowing that life is uncertain and that death is sure and while my mind is clear and alright I will make my last will and testament.

> "1st: I want all my just debts and funeral expenses paid in full and as soon as possible.

> "2nd: I will to my two youngest sons, Robert Morrow and James B. Ballenger, all my real estate and at their death to their legal heirs.

> "3rd: I have given to James B. Ballenger a

horse, cow, saddle and lots of other things and it's my will that my son Robert Morrow Ballenger be made equal with James B. Ballenger out of my personal property and then the remainder thereof be divided equally between the two.

"4th: I hereby designate my two sons, Robert Morrow and James B. Ballenger, executors of my will and ask that they wind up my affairs without giving any bond.

"5th: I have two daughters, Maggie and Eunice Bertram, and I think they are two of the greatest women on earth, but each has a noble husband who will care for them.

"6th: I will that my two youngest sons, Robert Morrow and James B. Ballenger, pay to my oldest son, John William Ballenger, $50.00 each and that they are given twelve months to pay these sums if they desire it.

"7th: I have a note of my oldest son, John William Ballenger, for the sum of $40.00 given a few years ago that I will to him and do not want it collected.

"8th: Should my son, John William Ballenger, sue or try to sue in order to break my will, then I will that the amounts set aside for him be not paid and the note be collected."

When the testator wrote and made this will in February, 1917, his family consisted of two married daughters and three sons, each of whom was specifically named and referred to in his will.

Testator died in 1920, when his will was probated in the Clinton county court and letters thereupon issued to his two youngest sons, Robert Morrow and James B. Ballenger, nominated as his executors, without bond, to wind up his affairs.

Following this, in 1923, Robert Morrow and James B. Ballenger, claiming to be the fee-simple owners of testator's real estate under clause 2 of his will, proceeded to subdivide the land so willed them, which consisted of a farm of some 70 acres lying adjacent to and partly within the town of Albany, Clinton county, Ky., into some 189 lots, which they sold at public auction to the

highest bidders therefor, to whom they conveyed the lots, so purchased, by deeds containing covenants of general warranty of title.

Further it appears that in 1937 the appellee, W. H. Nunn, bought from one J. C. Smith, a grantee of the devisees, Robert Morrow and James B. Ballenger, the 27 lots here involved (a portion of the land devised them by their father).

Thereafter, in October, 1940, the appellee, W. H. Nunn, plaintiff below, claiming under such chain of title to be the fee-simple owner of these lots, entered into a written contract with the appellant and defendant below, Odell Cummings, by which he agreed to sell and convey him, by a good and sufficient deed, with covenant of general warranty, title to these 27 lots acquired from J. C. Smith for a consideration of $600.

On November 15 following, appellee tendered appellant a deed executed by himself and wife, purporting to convey him the lots with covenant of general warranty, in accordance with the terms of their contract.

Appellant refused to accept the deed tendered him on the grounds that Nunn could not and did not thereby convey him a good title to the lots.

Following the refusal of appellant to accept the tendered deed, appellee brought this action in equity in the Clinton circuit court, seeking to compel appellant to specifically perform the contract entered into between them.

The parties having by appropriate pleadings joined issue upon the question of the alleged ability of appellee to convey a fee-simple title to the lots here involved, or that of whether appellant would have been vested with a fee-simple title thereto had he accepted the tendered deed, they further filed an agreed statement of facts.

Upon submission of the case to the chancellor on the pleadings and stipulation of facts, he rendered judgment in favor of plaintiff (here appellee), granting him the relief prayed of specific performance. Same was based upon his interpretation of the Ballenger will, as set out in his written opinion (made a part of the record), that the language used therein are words of descent or inheritance and not words of purchase, that the two Ballenger boys (appellee's remote grantors) took the fee in the

real estate devised them by their father and, accordingly, that all deeds executed by them conveyed a good and sufficient fee-simple title thereto.

Appellant, assailing the propriety of this judgment so construing the will and requiring his specific performance, prosecutes this appeal.

The only question presented here is the ability of the appellee to convey a fee-simple title to the lots as contracted for.

The determination of this question turns upon the construction of clause 2 of the Ballenger will, whereby testator devised to his two youngest sons, Robert Morrow and James B. Ballenger, all his real estate, adding thereto the words "and at their death to their legal heirs."

The addition of these words makes it our problem to determine what interest did the testator intend, by the language employed in this provision of his will (which is susceptible to either of the two constructions urged), to give to his two youngest sons; i. e., did testator, a layman who wrote his will, intend to use them only as words of limitation, vesting his sons with a fee estate in the land devised, or did he use them as qualifying words of purchase, having the effect of giving them only a life estate, with remainder passing at their death, in fee, to their heirs.

It is contended by appellee that the testator's two sons were by the wording of this clause thereby given a fee-simple title to the land, while on the other hand, appellant contends with equal earnestness that they took only a life estate thereunder, with remainder over at their death to their legal heirs, the gift of a remainder over indicating the first gift was intended as a life estate, even if the language of this clause, without the added words making a gift over, might have passed a fee.

This question, as to whether the estate devised to the first taker is a fee or a life estate, arises first in every case and must be determined from a consideration of the whole will. Beemon v. Utz, 217 Ky. 158, 289 S. W. 221; Penick v. Lewis, 194 Ky. 231, 238 S. W. 745; Whicker v. Strong, 258 Ky. 135, 79 S. W. (2d) 388; Blessing v. Johnston, 249 Ky. 777, 61 S. W. (2d) 635; Hopson's Trustee v. Hopson, 282 Ky. 181, 138 S. W. (2d) 365; Ruh's Ex'r v. Ruh, 270 Ky. 792, 110 S. W. (2d) 1097.

Testator's intention must be gathered, if possible, from the language used by him in his will and technical rules of construction will not be resorted to unless the meaning of the language of the will is ambiguous.

Here we find that the language used by testator in devising his land to his two youngest sons "and at their death to their legal heirs" is ambiguous and susceptible to two constructions. Appellant, as stated supra, insists that only a life estate was, by the language employed, given the first taker, while appellee contends the language should be construed as only words of limitation, giving testator's sons a fee-simple title to the land devised.

We turn now to a consideration of the language employed by testator not only in the devising clause of his will but also in its contextual provisions, with a view to ascertaining what interest or quality of estate he thereby intended to devise his sons in his land—that is, whether he meant to give them a fee or only a life estate.

It is to be observed that the phrase "and at their death to their legal heirs" employed in making this devise was not preceded by language expressly giving to his sons an estate only for life, or during their natural life, or other terms indicating only a life estate was intended to be given them, but merely devised them "all his real estate," which, when considered alone, under the provisions of Section 2342, Kentucky Statutes, providing that, "unless a different purpose appear by express words or necessary inference, every estate in land created by deed or will, without words of inheritance, shall be deemed a fee simple or such other estate as the grantor or testator had power to dispose of," would make it the duty of the court to adjudge construction favoring a fee, where it is not otherwise clear what estate the testator intended to devise. See Hopson's Trustee v. Hopson, supra; also Ely v. United States Coal & Coke Co., 243 Ky. 725, 49 S. W. (2d) 1021.

The question thus arises from such language devising his land to his sons as to whether a fee or a life estate was intended.

The contextual provisions of testator's will, serving to explain and clarify the intent with which the devising language of clause 2 was used by him, tend to show that he was attempting to give his two youngest sons a fee, in

that by them he seeks to explain or state his reason for the difference he makes between his five children in the disposition of his land. He states that his two married daughters are ''the greatest women on earth,'' each having a ''noble husband'' who will care for her. Further he stated that he held a note against the third son, John William Ballenger, for a loan made him some years back, which he directed should not be collected but forgiven him, and, further, that each of his two youngest sons, to whom he had willed his land, should pay him $50, evidently for the purpose of somewhat equalizing the share of his estate given him with that devised his two youngest sons.

Further, by the last clause of his will, testator directed that should his oldest son try to break his will because he was dissatisfied with the disposition he made of his land to his two youngest sons, he would forfeit the amounts directed paid him and his note was to be collected.

Clearly these provisions of the will evidence testator's intention, as expressed' by clause 2 of his will, to give to his two youngest sons his land in fee, as being the special objects of his bounty by reason of their needy youth and special dependence on him.

We are further authorized, where the terms of a will are obscure and ambiguous, to invoke the aid of extrinsic evidence to clarify its ambiguity, where it tends to show ''the motives which can be reasonably assigned to have actuated the testator, the purpose of his making the will, the relations existing between him and the devisees, and the nature and amount of the property embraced in the will or owned by the testator.'' Penick v. Lewis, supra, 238 S. W. at page 748.

In short, such extrinsic evidence may be and should be considered in ascertaining the intent with which the testator employed the ambiguous language of the will, where it enables the court to read the obscure language of the will in the light of the circumstances under which it was written and to put itself in the place of the testator, for the purpose of determining the objects of his bounty or the intended manner of the disposition of his estate. Walker v. Hibbard, 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832.

In such case, the applicable rule of construction not

only permits but admonishes that the court should take into consideration all the circumstances existing when the testator wrote his will, including the condition, nature and extent of his property and his relations to his family and the beneficiaries named in his will and even the motives which may reasonably be supposed to operate with him and influence him in the disposition of his property are entitled to consideration in ascertaining the meaning and intent of testator. 28 R. C. L., Section 244, page 270; Kerens v. St. Louis Union Trust Co., 283 Mo. 601, 223 S. W. 645, 11 A. L. R. 288; In re Nelson, 238 N. Y. 138, 144 N. E. 481, 34 A. L. R. 1245; Calloway v. Calloway, 171 Ky. 366, 188 S. W. 410, L. R. A. 1917A, 1210; Carpenter v. Carpenter's Trustee, 119 Ky. 582, 84 S. W. 737, 68 L. R. A. 637, 115 Am. St. Rep. 275; Ann. 103 A. L. R. 598.

While the cardinal rule of construction of a will is to ascertain and effectuate the intention of testator as gathered from the words of the will itself, yet where the will was unskillfully written by the testator himself, as was here the case, "this fact must be considered in the judicial interpretation of his pervading intent." Delph v. Delph, 65 Ky. 171, 2 Bush. 171; Sections 1127 to 1130, 69 C. J., pages 72 to 77 inc. Also see Page on Wills (Lifetime Edition), volume 2, Section 921, pages 823 and 824.

The stipulation of facts here filed gives us the extrinsic evidence enabling us to consider and interpret testator's will in the light of his situation, circumstances and motives, as set out supra, as affording the court helpful insight into the real purpose and intent of testator when expressing it in the obscure and ambiguous language used by him.

It appears by this stipulation of facts that at the time testator wrote this will in 1917 his two youngest sons, Robert Morrow and James B. Ballenger, were then living with him on his farm, constituting all of his real estate, which he devised them; that the younger of the two, Robert Morrow, was then but seventeen years of age, single and has never married, while the other, James B. Ballenger, was then twenty-two years of age and had a wife and young baby; and that neither of them apparently had any means of livelihood other than that of living and working on the farm of their father.

Further it appears that the chief value of testator's

small farm, lying in and adjacent to the town of Albany, consisted of its fitness, by reason of its location, for subdivision into town lots and that testator anticipated, when devising the land to his two youngest sons, that they would make such use of it and therefore realized that to profitably do so they would have to be given the land in fee, to the end that they might convey it with like title, as no one would purchase the lots and erect improvements thereon unless he would be given a fee-simple title thereto.

Also, testator uses no words or other language in writing the whole will which indicate any intention to devise a life estate to his sons, or any estate other than a fee, since his wording of the devising clause of the will clearly expresses, when considered with its contextual provisions, his wish and intention that his other children (specifically named and referred to) were not to take any interest or share in his real estate but that all of it, as expressly set out, was to go to his two youngest sons. Also this our conclusion is further fortified by our review made of the stipulation of facts, which reflect the circumstances and family conditions existing at the time testator made his will, in that they tend to accentuate his expressed purpose that his two youngest sons should be exclusively given his farm in fee.

Appellant, stressing the technical terms of the will, nevertheless contends that testator's words used in clause 2 of his will, devising all his real estate to his two youngest sons "and at their death to their heirs," gave the sons but a life estate in the land, with remainder passing at their death to their heirs, in that the word "heirs" as there used by testator was a term of purchase and not of limitation.

In support of this contention, appellant relies upon the cases of Banzhoff v. Smith, 233 Ky. 737, 26 S. W. (2d) 1034, and Reeves v. Tomlin, 213 Ky. 547, 281 S. W. 522, as precedents controlling our construction of the wording of clause 2 as vesting the devisees with only a life estate.

We are unable to concur with this contention that the cited cases are to be accepted as precedents controlling in the instant case and in this connection we are reminded of the old epigram that "no will has a broth-

er,'' or, as said in the case of Penick v. Lewis, supra, 238 S. W. at page 747:

"There were never any two wills alike, inasmuch as there were never two testators alike with like estate and surrounding circumstances, and hence each will depends for its construction upon its own language, and the circumstances surrounding each testator, so far as they will shed light upon the language used.''

This same view is expressed in Hopson's Trustee v. Hopson, supra, that ordinarily, precedents are of little value in construction of wills because of the diversity of their terms and the variety of circumstances surrounding testator.

In the Banzhoff case, supra, relied upon by appellant, the wording of the devising clause of the will directed that the real estate of testatrix should be held intact by her father and that from its proceeds he should receive $5 a week as long as he lived; that after his death it should be divided into two equal parts, one going to her son and the other to her daughter; and that after their death it was to go to their respective heirs.

There the court, in attempting to harmonize all the provisions of the will, in order to arrive at the testatrix' intention, held the word "heirs" to be one of purchase and not one of limitation and that only a life estate was devised to the son and daughter.

It will be noted, however, that a life estate was expressly there devised first to testatrix' father, which was followed by the provision that after his death the property was to be divided into two equal parts, one going to the son and the other to the daughter, which at their death was to pass to their heirs.

The court there viewed the will as presenting the question of whether only a life estate or a fee was devised the son and daughter, adding that for the determination of such a question, as stated in Page on Wills, Section 976:

"No set rule can be laid down for determining whether testator's intention in making a devise over after the death of a devisee to whom an estate in fee has already been given is to restrict the interest of the first taker to a life estate or to create a fee which

lacks certain necessary incidents. This intention must be gathered from the whole will.''

In the Reeves case, supra, while the language of the devising clause is much the same as that appearing in this case, the court construed it as giving only a life estate to testator's son, by reason of other provisions of the will tending to show that only such a limited estate was given him.

It is our conclusion that these cases cited and relied on by appellant are not here controlling of the question here presented, for the reason that the devises construed in those cases are worded very differently from that involved in the instant case and are therefore very plainly distinguishable.

It being the rule that the intention of the testator, as ascertained under the above announced rules, must be given effect and it clearly appearing to our mind that the testator's intent was here to give his sons a fee estate, we are led to approve the construction of the will given by the chancellor, holding that the sons took a vested fee in the land of their father, with the result that their deeds, later conveying the same property, passed a good fee-simple title. This being true, it must follow that the appellee, holding title to the lots under the will here involved, was able to and did by his tendered deed convey appellant a vested title to the lots contracted for and the judgment is accordingly affirmed.