**Sara Kinney Macey EDMONDSON, Appellant,**

**v.**

**Charles WYLIE, Executor and Trustee Under the Will of John I. Macey, Deceased, Appellee.**

Court of Appeals of Kentucky.

Oct. 21, 1955.

John L. Davis, Stoll, Keenon & Park, Lexington, for appellant.

William E. Sloan, Nelson Hoskins, Lexington, for appellee.

STEWART, Chief Justice.

This action is a sequel to the case of Clay v. Security Trust Co., Ky., 252 S.W.2d 906. In that opinion it was decided that the testator in the present action, John I. Macey, was the owner of a vested remainder interest in the trust estate created by the will of James T. Clay. This trust estate consists entirely of investments in stocks and bonds and its value is now in excess of $40,000.

The will of James T. Clay provided that his estate was to be held in trust for his sister for life and was then to be held by the trustee until John I. Macey reached the age of 35 at which time the corpus was to be turned over to the latter. John I. Macey was killed in World War II in 1944 before

he reached the age of 35. This Court held that the James T. Clay trust estate nevertheless vested in John I. Macey even though he departed this life before reaching the age of 35.

Following the rendition of the foregoing opinion, this declaratory judgment action was instituted seeking a construction of the will of John I. Macey and a determination of whether the remainder interest in the trust estate created under the will of James T. Clay passed absolutely to appellant, the widow of John I. Macey, or into a trust provided for in the will of this last decedent.

The particular provisions of the will of John I. Macey which give rise to the controversy at hand read as follows:

"If I predecease my wife, Sara Kinney Macey, all personal property, other than money, bank deposits, securities of any nature and the income therefrom, proceeds from life insurance policies, and any other intangible personal property I may have; shall go to the said Sara Kinney Macey.

"All intangible personal property and other personalty excluded from the bequest in the foregoing paragraph, and all real property shall be held in trust for the said Sara Kinney Macey for so long as she shall live."

The will further provided, in part, that, after the payment of certain bequests, the trustee should immediately pay $500 to the testator's widow and thereafter $75 per month to her out of the income of the estate so long as she lives, or, if the income should be less than $75 per month, the trustee should sell the corpus of the estate and make the $75 payments each month until the estate is exhausted, but, if the income should accrue at a rate greater than $75 per month, this entire amount should be disbursed to the widow in equal monthly installments. The will also directed that if issue should be born to the testator or a child or children should be adopted by him and his wife, the monthly payments to the wife should be $125 per month for one child and an additional $25 for each child after the first. If the income of the estate made larger monthly payments possible, such payments should be made. Encroachments on the corpus were to be allowed under certain emergencies. The will makes provision for the disposition of any of the corpus of the trust which may be remaining after the death of appellant to certain additional devisees.

The chancellor adjudged the James T. Clay fund was a trust for the use and benefit of the wife under the terms of the will of John I. Macey, and this appeal is from that decree.

A theory advanced why the testator could not have contemplated embracing the James T. Clay fund in the first clause, quoted above, of the John I. Macey will is because this fund, according to appellant, "had never actually vested in possession in John I. Macey prior to his death." Appellant also argues that the exclusionary designation in this clause closes with the word "therefrom." In this connection, he points out that appellant was the sole beneficiary of all of John I. Macey's life insurance policies at the time of his death and, since the phrase "proceeds from life insurance policies" immediately follows "therefrom" and since the decedent did not in fact exclude appellant from the proceeds of his life insurance, this is a reason, it is maintained, why the testator intended the enumeration of classes of the property excluded should cease with the word "therefrom" in this first clause. Appellant asserts that, after excepting the property the testator meant to exclude from her, namely, life insurance proceeds and intangible personalty, this first clause should read and be construed thus: "* * * all personal property and any other intangible personal property I may have; shall go to the said Sara Kinney Macey."

We find ourselves unable to go along with these contentions. In the first place, we believe the language employed by the testator clearly indicated what property he wished to exclude his wife from taking outright. What follows in the sentence of this first clause after the phrase "personal

property" and ends with the semicolon is in unbroken sequence. Moreover, the semicolon was deliberately employed to point up the termination of the exclusionary language, for it can scarcely be explained otherwise. The succeeding paragraph of the John I. Macey will reiterates what he intended by this particular clause, especially with reference to intangible personalty, because it emphasized that *"all intangible personal property* and other personalty *excluded* from the bequest in the foregoing paragraph, and all real property shall be held in trust for the said Sara Kinney Macey * * *."* It is difficult to arrive at a different construction from that indicated.

■ Another reason why we conclude the property involved was intended by the testator to be held in trust for his wife stems from the situation confronting him at the time he made his will. It is our view, as we have mentioned, the language of the will is sufficiently plain that no recourse to the circumstances surrounding the testator at the time he drafted it is needed to demonstrate what he had in mind as regards the disposition of his property. However, if there is ambiguous phraseology in a will, it is well established that, to enable a court to arrive at a proper interpretation of such ambiguous language, the motives which may be reasonably assigned to have actuated the testator in the disposal of his property, the relations between him and his legatees, and the nature and amount of the property embraced in the will or then owned by the testator, may be considered in aid of the language used in the instrument in order to ascertain the testator's intentions. See Penick v. Lewis, 194 Ky. 231, 238 S.W. 745, and the cases cited therein.

When he made his will, John I. Macey had just graduated from law college and begun the practice of law. The evidence is undisputed that he had accumulated no estate at the time he wrote his will in June of 1939. It is also undisputed that he then knew of his expectancy to inherit the James T. Clay fund when he reached the age of 35. No property of any description came into the hands of appellee as executor and trustee until it was decided in 1952 that the James T. Clay fund vested in the John I. Macey estate. In the face of these facts are we to assume that John I. Macey would provide for a trust paying a very substantial income to his wife and his possible children without the knowledge and belief that the corpus of this trust would have to consist of the property he would unquestionably receive from the James T. Clay estate? Our answer must be in the negative, since the conclusion is inescapable that the James T. Clay fund is the very property intended by the testator to be held in trust for his wife. That the decedent did not have this property in his actual possession, which fact appellant relies upon, does not militate against the idea that he intended his will to dispose of it.

■ We take issue with appellant's contention that, because the testator had made her beneficiary of all the insurance he had taken out on his life at the time of his death, he intended the phrase "proceeds from life insurance policies" to be omitted from the operation of the exclusionary clause. The testator had two such policies on the occasion of his death and his wife was named as beneficiary in both. The date one of these was issued to him is not disclosed, but the other policy was taken out by him while he was in the armed service of the United States and this was some time after he had written his will. He may have possibly contemplated taking out considerable life insurance and making most or all of it payable to his estate when he drafted his will, but no doubt the occurrence of World War II caused him to reconsider this original idea and plan with the immediate future in mind. He could have intended changing to some extent the beneficiary in his life insurance policies if he came out of the war alive. We can only speculate in this respect. Certainly, what transpired after the will was executed cannot be considered in evaluating the purpose of the testator at the time he wrote it.

We are of the opinion that the will of John I. Macey created a valid trust in favor of his wife and that he intended the property which he would eventually receive under the will of James T. Clay to comprise the corpus of this trust. The judgment of the lower court was correct in every respect and it is hereby affirmed.