## PENOBSCOT RAILROAD COMPANY *versus* ISRAEL WEEKS.

No Court can rightfully render judgment in a cause, until it has acquired complete jurisdiction over the parties, the subject matter of the suit, and the process.

Such jurisdiction is not acquired until the defendant is in some way notified of the pendency of the suit.

If, upon inspection of the record, a judgment, by whatever Court rendered, and by whatever means brought in question, appears to have been rendered without such notice, it is absolutely void for such purposes.

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.
DEBT.

The action was on a judgment recovered against the defendant, before the Supreme Judicial Court, at the October term, 1853, in and for the county of Penobscot, on which several executions had been issued, the last bearing date Feb. 14, 1862.

The plaintiffs put into the case a copy of the judgment and the last execution. Nothing appeared to have been paid on the judgment.

The defendant put in a copy of the writ in the original suit.

The original writ described the defendant as " of Orono, in the county of Penobscot;" and the officer's return thereon contained a general attachment of the defendant's real estate, concluding as follows: — "and said defendant not being found in my precinct, I made no further service."

Attached to the writ was the following obligation: —

" Know all men by these presents, that I, Nathaniel Wilson of Orono, in the county of Penobscot, Esquire, am bound, and hereby bind and obligate myself, to indemnify and save N. Weston, jr., Esq., Clerk of the Courts for the county of Penobscot, harmless from any and all damage and cost that can or may accrue to him in any and all ways, from issuing and delivering to me, as attorney to the Penobscot Railroad Co., an execution on the writ in the name of said company, against Israel or Isaac N. Weeks. Said writ bearing date Sept. 20, 1863, and real estate being returned as attached by the officer, but no further service, the said debtor *not* (then) being within the precinct of the officer, and said action being duly entered at the October term of the Supreme Judicial Court, 1853, and defaulted.

" Witness my hand and seal.

" July 19, 1854. "N. Wilson. [L. S.]

" In presence of Elliot G. Vaughan."

The full Court were to render judgment for the plaintiffs or defendant as the law required.

*S. Heath*, for the plaintiffs.

1st. The judgment declared on was one recovered in this State and the Court had jurisdiction of the subject matter thereof, and was obtained according to the provisions of law. R. S., 1841, c. 115, §§ 3, 4, 5, 6, 7, 8, the latter sections guarding the rights of defendant.

2d. Property of defendant was attached, according to the officer's return; because plaintiffs did not choose to levy, is not proof that there was none; want of jurisdiction, under the conditions of the original judgment, is a matter to be proved. The legal presumptions are in favor of plaintiffs.

3d. When a party obtains a judgment according to the laws of the State, it can hardly be said to be obtained by *fraud*. But, according to the case cited by defendant, a *domestic judgment, fraudulently* obtained, is conclusive until reversed. Cases cited by the Court in *Granger* v. *Clark*, 22 Maine, 128.

4th. But the objections made by defendant to the validity of the judgment do not lie; it cannot be invalidated in this way. The judgment is good until reversed. *Hawes* v. *Hathaway*, 14 Mass., 233.

*J. Baker*, for the defendant.

The opinion of the Court was drawn by

WALTON, J.—No Court can rightfully render judgment in a cause until it has acquired complete jurisdiction over the parties, the subject matter of the suit, and the process.

Such jurisdiction is not acquired until the defendant is in some way notified of the pendency of the suit.

If, upon inspection of the record, a judgment appears to have been rendered without such notice, it is absolutely void,—a mere nullity.

If the record of a judgment of a domestic Court of general jurisdiction declares notice to have been given, such declaration cannot be contradicted by plea and proof; because, for reasons of public policy, the records of such

Courts are conclusively presumed to speak the truth, and can be tried only by inspection.

The records of courts of limited jurisdiction, and of foreign courts, may sometimes be contradicted by plea and proof, when the purpose is to show want of jurisdiction; but the records of domestic courts of general jurisdiction cannot be thus contradicted, — it can only be done when proceedings are instituted for the express purpose of setting them aside.

But the records of all courts are liable to be impeached if it can be done by inspection alone; and if such inspection discloses want of jurisdiction over the person of the defendant, the judgment as against him will be void for every purpose.

The judgment declared on in this case was obtained in a manner highly objectionable. The writ was returned with a nominal attachment of real estate upon it, but without service upon the defendant, the officer giving as an excuse that he could not be found in his precinct. It was then the duty of the plaintiff's attorney, if he desired to prosecute the suit further, to obtain from the Court an order of notice, and to have that order complied with. Instead of this he allowed the action to be called and defaulted. This was a fraud upon the Court. The action was not in a condition to be defaulted, a fact which the Court had no means of knowing, but which must have been known to the plaintiff's counsel. He then took advantage of this default, and, by means of an indemnifying bond, induced the clerk to enter upon the records of this Court a judgment against the defendant. This was illegal, and rendered the guilty parties liable to summary punishment, as for a contempt. There are many precedents of summary punishment for such practices.

It needs no argument to demonstrate that such a record is not entitled to the respect due to a solemn judgment of this Court. It was an illegal interpolation, and ought to be erased. Such would be its fate in England, and, we pre-

sume, in every other country where fairness and common honesty are elements in the administration of justice.

It is enough, however, for our present purpose, to say that such a record, being illegal and void upon its face, will not support an action of debt.

The authorities are numerous which support the foregoing propositions. A few only will be referred to.

"If a judgment be obtained in a Superior Court, clandestinely, by abuse of its forms, and by deceiving its officers, the defendant, against whom it is sought to enforce such judgment, may obtain a speedy remedy by applying to have it set aside, *and the offender punished by attachment.*" Brown's Legal Maxims, 232, 4th ed.

"In this country [England] a party may, as we know, obtain a judgment against another behind his back, if he will abuse the forms of the Superior Court and deceive its officers. To be sure, if he were to attempt to enforce such a judgment, the defendant would have a speedy remedy by applying to have it set aside, *and the offender punished by attachment.*" 2 Smith's Leading Cases, 500, edition of 1847. For numerous instances of the application of this doctrine, see Bouvier's Bacon, tit. "Attachment."

In *Harris* v. *Hardiman*, 14 Howard, 334, (20 Curtis, 206,) the Reporter's abstract is as follows:—"The Circuit Court may set aside a judgment of a former term, rendered on default of a defendant who had no notice of the action; such a judgment being merely void, the Court has power *summarily* to declare it to be inoperative, and to stop all proceedings under it." In the course of the opinion, the Court say:—"In all judgments by default, whatever may affect their competency or regularity, every proceeding, indeed, from the writ and indorsements thereon, down to the judgment itself, inclusive, is part of the record, and is open to examination. That such cases differ essentially, in this respect, from those in which there is an appearance and a *contestatio litis*, in which the parties have elected the grounds on which they choose to place the controversy, expressly or

impliedly waiving all others. * * * It would seem to be a legal truism, too palpable to be elucidated by argument, that no person can be bound by a judgment, or any proceeding conducive thereto, to which he never was party or privy; that no person can be in default with respect to that which it never was incumbent on him to fulfil. The Court entering such a judgment by default, could have no jurisdiction over the person as to render such personal judgment, unless, by summons, or other process, the person was legally before it. * * * A judgment depending upon proceedings *in personem* can have no force as to one on whom there had been no service of process, actual or constructive; who has had no day in Court, and no notice of any proceeding against him. That, with respect to such a person, such a judgment is absolutely void; he is no party to it, and can no more be regarded as a party than can any and every other member of the community. * * * It is believed to be the well settled modern practice, that in all instances in which irregularities could formerly be corrected upon a writ of error *coram vobis*, or *audita querela*, the same objects may be effected by motion to the Court, as a mode more simple, more expeditious, and less fruitful of difficulty and expense."

In 1 Smith's Leading Cases, (5th American ed.,) 834, the result of many authorities is summed up as follows:—
"While domestic judgments are tried in some particulars, by a severer test than those of foreign tribunals, they are protected in others by stronger barriers, and an averment of notice or appearance on the record, cannot be contradicted by extraneous evidence; but the judgment is sustained under these circumstances, not because a judgment rendered without notice is good, but because the law will not permit any proof to weigh against that which its policy treats as absolute verity, and remits the injured party to his remedy against those by whom the record has been falsified. When, however, the record itself shows expressly, or by a necessary implication, that a foreign or domestic, a superior or inferior tribunal, has proceeded without notice, and without

any sufficient reason or excuse for the want of notice, no further presumption can be made in its favor, and it may be impeached and set aside collaterally, as well as in the course of regular proceedings in error."

In *Capel* v. *Child*, 2 Cr. & J., 558, BAYLEY, B., said, "that no judicial proceeding should deprive a man of any part of his property, without giving him an opportunity of being heard;" while PARKE, B., remarked, in *Bancher* v. *Evans*, that the above case showed "how firmly the Court adhered to the great principle of justice, that in every judicial proceeding *qui aliquid statuerit, parte inaudita altera, aequum licet statuerit non aequus fuerit.*"

"Before the rights of an individual can be bound by a judicial sentence," said ROGERS, J., in *M'Kee* v. *M'Kee*, 2 Harris, 231, "he must have notice of the proceeding against him. This is announced as a maxim of natural justice and *universal application* by MARSHALL, C. J., in the case of the *Mary*, 3 Peters, 312. Such notice is indispensably necessary to give jurisdiction over the person of the party; and it has been truly said, that, without citation and an opportunity of being heard, the judgment of a Court, whether ecclesiastical or civil, is absolutely void." The same ground was taken in *Bloom* v. *Burdick*, where BRONSON, J., said, — "It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into Court; and, if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the Court had undertaken to act where the subject matter was not within its cognizance."

The opinions thus expressed, are supported by a great number of cases, in which notice has been said to be essential to jurisdiction in suits *inter partes*, and the failure to give it, held to render the proceedings, both of superior and inferior tribunals, not voidable merely, but absolutely void.

In *The lessee of Walden* v. *Craig's heirs*, 14 Pet., 154, it was held that the service of process, or notice, is necessary to enable the Court to exercise jurisdiction in a cause ; and that, if jurisdiction be taken when there has been no service of process or notice, the proceeding is a nullity, not voidable only, but absolutely void. And, in *Hollingsworth* v. *Barbour*, 4 Peters, 475, and *Shriver's lessee* v. *Lynn*, 2 Howard, 43, it was held that a judgment without notice or appearance, is a nullity, and will be so held when brought into question collaterally. And, in *Steen* v. *Steen*, 3 Cushman, (25 Miss.,) 513 ; and, in *Hess* v. *Cole*, 3 New Jersey, 116, it was held that unless the record show notice, the judgment is simply void, and may be disregarded in any collateral proceeding in which it is relied on, either as a cause of action, or as a defence. In *Bigelow* v. *Stearns*, 19 Johns., 39, SPENSER, C. J., declared that, if a Court, whether of limited or superior jurisdiction, undertake to hold cognizance of a cause of action, without having gained jurisdiction of the persons of the parties, by having them before the Court in the manner required by law, the proceedings would be void.

There are many cases in which it has been held that the judgments of all courts, whenever and wherever brought in question, may be avoided, by proof that notice was not given to the parties prejudiced by them, in opposition to a positive averment on the record that it was, such averment being treated only as *prima facie* and not conclusive evidence of the fact. But the weight of authority seems to be, with respect to domestic judgments of courts of general and common law jurisdiction, that the recital of notice will be conclusive when the judgment is attacked collaterally, and that such judgment will be regarded as absolutely void only when the want of notice is apparent upon inspection.

The judgment now under consideration contains no recital of notice. It is not even silent upon the subject. The officer returns that the writ was not served upon the defendant, giving as an excuse that he could not find him within

his precinct.  The action was defaulted and judgment made up at the return term, so that it is impossible to indulge in any reasonable presumption that an order of notice was obtained and complied with ; and to sustain a judgment obtained as this was, no unreasonable presumption should be indulged in.  The case is one where it is apparent upon inspection of the record alone that no notice was given ; and it is believed that no case can be found in England or America, in conflict with the doctrine, that such a judgment, by whatever court rendered, and by whatever means brought in question, is void — not voidable merely, but absolutely void for all purposes — and will be so held in any proceeding, collateral or otherwise, in which its validity may be brought in question.  These remarks do not apply to proceedings under the 3d and 4th sections of the 82d chap. R. S. authorizing judgments against absent defendants, and the issuing of execution upon the judgment creditor's filing with the clerk a bond conditioned to repay the amount to the defendant if the judgment is reversed on review, to which he is entitled of right, if brought within one year.  In this case there is nothing to indicate that the defendant was absent from the State, nor was any such bond filed.  The bond filed by the plaintiffs was to the clerk to indemnify him for entering up the illegal judgment, and not to the defendant, to indemnify him against the consequences of it.

The fallacy of the argument in support of this judgment consists in the assumption that jurisdiction relates only to the subject matter of the suit, whereas in fact it embraces, not only the subject matter of the suit, but also the persons of the parties and the process ; and, in overlooking the distinction between impeaching a record by evidence *aliunde*, which in this State and many others is not allowable, and impeaching it by *inspection*, which is allowable.  These distinctions have often been overlooked by judges when declaring that judgments could not be impeached by plea and proof, or evidence *aliunde*, and there are many loose expressions to the effect that all judgments of courts of general juris-

diction are conclusive till reversed. But whenever the attention of Judges have been called to these distinctions, they have been at once recognized, and their soundness acknowledged. *Plaintiff's nonsuit.*

APPLETON, C. J., CUTTING, DAVIS, BARROWS and DANFORTH, JJ., concurred.