JUDGE HARDIN
delivered the opinion of the majority of the court:
George Palmer, late of Bourbon county, died in 1843, leaving a will, by which he disposed of his estate, which was mainly situated in the counties of Bourbon and Harrison. The second, third, and fourth clauses of the will are as follows:
“ Secondly. I give to my beloved wife, Mary Palmer, one half of all my estate and possessions in Bourbon county, so long as said Mary lives my widow; and if she marries, she is to have but one third of said estate, as long as she lives; and, after her decease, to go to my daughter, Amanda Jane Miller, and her bodily heirs.
“ Thirdly. I give to my wife, Mary Palmer, my houses and lots in and near the town of Oynthiana, Harrison county, to her forever, to dispose of as she may think proper, at her own will and pleasure.
“Fourthly. The other half of my estate in Bourbon county I do give to my daughter, Amanda Jane Miller, and her bodily heirs. Amanda Jane Miller is to have Charles, a black man, about twenty-five years old, and Martha, a black girl, about thirteen years old, in part of her half of said estate in the negroes. Also I give to my daughter, Amanda Jane Miller, and Henry B. Miller, my son-in-law, all my land, about two hundred and forty acres, in Shelby county, Indiana, to them and their heirs forever, to do with and dispose of as they wish. If my daughter, Amanda Jane Miller, die and have no child or children, all my negroes and their offspring is to return to my wife, Mary Palmer, if she is living, to free all of any part of them. If she is dead before the death of my daughter, and she die and have no child or children, all my negroes and their offspring is to be free. If Henry B. Miller outlives my daughter, Amanda Jane Miller, and *280 my wife, Mary Palmer, lie is to have the use of my Bourbon farm as long as he lives. Then, if my daughter, Amanda Jane' Miller, has left no child or children, then the said farm is to be equally divided between my six sisters and Jane Ellis, my wife’s sister, equal with one of my sisters, and their heirs forever. At the death of my sister, Polly Morris, her part is to go to Jane Ellis, my sister, or her children.”
. Subsequent to the testator’s death, said Amanda Jane Miller became the wife of Robert H. Forrester, and afterwards died, leaving four children, the issue of her said last marriage, viz : Mollie Forrester, Frances Forrester, Richard Forrester, and Henry Forrester. Said Mollie Forrester subsequently died while an infant and unmarried.
The tract of land in Bourbon county, which contained about two hundred and fifty acres, appears to have been in the possession and use of Forrester and wife during their marriage.
On the 17th day of October, 1859, said Forrester, claiming to own an interest of one fourth in said land, by inheritance from his said deceased daughter, and having, with the appellants, Righter and Shawhan, as his securities, become indebted to Robert McKee in two notes of one thousand dollars each, dated the first day of October, 1859, and payable at one and two years thereafter, with interest from date, executed a deed of mortgage to said Righter and Shawhan of his interest in the land and certain other- property, to indemnify them as his sureties in said notes.
One of the notes having been assigned by McKee to W. N. Haldeman and the other to B. 0. Pickett, and Righter and Shawhan having been compelled to pay the note assigned to Haldeman, by a. suit in the Harrison *281 circuit court, they brought this suit, on the 15th day of March, 1861, to foreclose the mortgage.
And afterwards, by an amended petition, the payment of the note assigned to Pickett is alleged, and the appellee, Troutman, who claims the interest of Forrester in the land by purchase under execution, is made a defendant.
Troutman filed his answer, claiming to have acquired Forrester’s interest in the land by the sale and deed of the sheriff to him, and that his purchase was made without notice of the mortgage, actual or constructive.
And afterwards, in July, 1863, an amended petition was filed, by consent, whereby said Frances, Richard, and Henry Forrester, the surviving children and heirs of said Amanda Jane Forrester, were joined with Righter and Shawhan as plaintiffs in the action as against Trout-man ; and, being so admitted as plaintiffs, they claim to be entitled to three fourths of the land as devisees of Geo. Palmer, deceased, and the rents and profits thereof, and seek to set aside the sale and conveyance to Trout-man.
The court, on final hearing, rendered a judgment dismissing the action, and from that judgment Righter and Shawhan and said children of Amanda Jane Forrester, deceased, have appealed to this court.
The first question to be determined is, what was the nature and extent of Robert H. Forrester’s interest in the land. And this inquiry involves the construction of George Palmer’s will. If, as is contended for the appellants, said Amanda Jane took an estate for life only under the will, and her children, as embraced by the words “bodily heirs,” took the remainder in fee, it follows, that . while R. H. Forrester acquired no estate for life upon the death of his wife, he did acquire, by inheritance from his *282 daughter Mollie, her interest in the land in fee. But if, as insisted for Troutman, the will vested in Mrs. Forrester a defeasible title in fee, then her husband acquired, at her death, an estate for life in the land as tenant by the curtesy ; but took nothing by inheritance from his deceased daughter, being excluded by 9th section of chapter 30, of the Revised Statutes.
As was said by this court in the case of Johnson vs. Johnson (2 Metcalfe, 333), “it is a well-settled rule, established by numerous adjudications of this court, and recognized and acted upon in several very recent cases, that the words ‘ heirs of the body,’ ‘ heirs lawfully begotton of the body,’ and other similar expressions, are appropriate words of limitation, and must be construed as creating an estate tail, which, by our statute, is converted into a fee simple, unless there be something else in the deed or will from which a reasonable inference can be drawn that the words were used in a sense different from their legal and technical signification.” (Lachland’s heirs vs. Downing’s ex’rs, 11 B. Monroe, 33; Prescott vs. Prescott’s heirs, 10 B. Monroe, 58; Brown vs. Alden, 14 B. Monroe, 144.)
But looking to the entire will to ascertain the testator’s intention in using the words “ bodily heirs,” whether in their technical sense or more popular signification, as synonymous with the word children or descendants, our conclusion is that the latter is the true construction.
The fact that in the devise of the land in Indiana, where it is clear the testator intended to vest the title in fee in his daughter and her husband, the expressive words are employed, “ to them and their heirs forever, to do with and dispose of as they wish,” while in the second and fourth clauses of the will, the words “ bodily heirs” are used in reference to the land in Bourbon county, tends *283 strongly to the conclusion that the testator, although unskilled in the use of technical language, understood and intended by the words employed to limit the title of Mrs. Forrester in the land in Bourbon county to an estate for life.
And this construction is strengthened by the language used by the testator in the third clause of the will, by which he devises to Mary Palmer his houses and lots in and near the town of Cynthiana, “ to her forever, to dispose of as she may think proper, at her own will and pleasure.”
In this devise, as in that to Miller and wife of the land in Indiana, the testator does not stop with words usually employed to pass the title in fee; but, as if to confirm his intention, undertakes to confer on the devisee, in express words, the power of disposing of the estate. And if he had intended to vest in his daughter more than a life estate in the land in Bourbon county, there can be but little doubt that he would have done so in language equally expressive of his intention; and while this inference may be fairly indulged, for the reasons we have mentioned, the testator’s manifest want of skill in technical phraseology may account for his using the words “bodily heirs” in a sense different from their ordinary legal signification.
It results, from our construction of the will, that Robert H. Forrester had no estate in the land as tenant by the curtesy, and Troutman, therefore, acquired no right by his purchase in opposition to the claim of the appellants, Frances, Richard, and Henry Forrester.
But as to the interest in the land inherited by Forrester from his deceased daughter, an inquiry of some difficulty arises in regard to the effect of the sale and conveyance by the sheriff to Troutman.
*284 The mortgage to Righter and Shawhan was prior in date to the executions under the levy of which the sale was made; but, although it was recorded in Harrison county in January, 1860, it does not appear to have been recorded, or lodged for record, in Bourbon county, where the land lies, until the 27th day of November, 1860, after the levy of the executions, and shortly before the sale, which was made on the 3d day of December, 1860. It does not appear that Troutman, or the plaintiffs in the execution, had any other notice of the mortgage than that implied by law from its admission to record in Bourbon county.
By the 11th section of chapter 24, of the Revised Statutes (Stanton's edition, vol. 1, 280), “No deed of trust or mortgage, conveying a legal or equitable title to real or personal estate, shall be valid against a purchaser for a valuable consideration without notice thereof, or against any creditor until such deed shall be acknowledged or proved according to law, and lodged for record.”
It is insisted, however, that the admission of the mortgage to record in Bourbon county was equivalent to actual notice, before the sale to Troutman. But, conceding his purchase to have been affected by this constructive notice, we incline to the opinion, nevertheless, that the sale and conveyance operated to transfer to Troutman such equitable rights as the creditors acquired by virtue of the issual and levy of their executions. But whether the rights so acquired were superior or subordinate to that of the mortgagees, would seem to depend on the legal effect of the mortgage before it was recorded in Bourbon county. If, although it was inoperative as a legal conveyance of the title, it was effective to invest the mortgagees with an equity in the land, though liable to be defeated by a prior equity, or even a junior equity, *285 when united with the legal title, acquired without notice, as its creation was prior in date to the delivery to the sheriff of the executions under which Troutman purchased, the equity of .the latter must be held to be subordinate to that of the mortgagees.
The provisions of the 24ih chapter of the Revised Statutes,' so far as they affect the validity of unrecorded deeds and mortgages with respect to the rights of creditors and purchasers without notice, do not differ materially from the act of 1785 for regulating conveyances. Under that act the question of preference in a court of equity between the holder of an unrecorded deed or mortgage and a purchaser under execution, with notice of the conveyance, has been repeatedly the subject of adjudication in this court; and we are aware that in Helm vs. Logan's heirs (4 Bibb, 78), it was decided “that a purchaser under execution is not affected by his notice of a mortgage which was not recorded, and therefore void as to creditors.” But in Campbell, &c., vs. Mosby (Litt. Select Cases, 358), a majority of the court decided that the equity of the holder of a bond for a conveyance was paramount and superior to the title of a purchaser under execution with noticeand broadly asserted the opinion that the equity of the purchaser by unrecorded deed was superior to, and would prevail in a contest with, the general creditor, or a subsequent purchaser with notice.”
And although afterwards, in the case of Graham vs. Samuels (1 Dana, 166), a majority of the court sustained the principle settled in the case of Helm vs. Logan's heirs, and overruled the opinion expressed in the case of Campbell vs. Mosby, this court afterwards, in Morton vs. Richards and others (4 Dana, 258), upon an elaborate examination of the authorities bearing on the question, decided that “ upon a full review of those decisions, and *286 comparison of them with the English decisions upon their registry acts, we incline to the opinion expressed in the case of Campbell vs. Mosby;" and the court proceeds to lay down the doctrine, that, although an unrecorded deed is invalid under the statute as a legal conveyance, “ yet it is evidence of a purchase for a valuable consideration, therefore evidence of an equity of as high a grade as a bond.”
It is further said by the court, that, “ by well-established principles, in a contest between mere equities, the senior equity must prevail over the junior. But the junior equity, coupled with the legal title, fairly acquired without notice, will prevail over the senior equity. And this is the only advantage which the general creditor may acquire under the recording statutes, namely, the privilege of arming himself with the legal title, and with all the legal as well as equitable advantages which it may afford him in a contest with the prior equity.”
The principles here announced appear to have been in later cases substantially adhered to, and they seem to us manifestly applicable to the question we have under consideration. It is not deemed necessary to discuss the objection taken to the sale to Troutman for irregularity and inadequacy of price. As between him and the mortgagees, the question is one of priority of equity, and, from the views we have already expressed, it results that, in our opinion, Judge Williams dissenting, Troutman acquired by his purchase but an equitable interest, subject to that of the mortgagees.
Wherefore, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.