## Sower, Trustee, et al. v. Lillard, et al.

(Decided February 13, 1925.)

## Appeal from Anderson Circuit Court.

1. Contracts—Intent of Person Executing Writing to be Gathered from Entire Instrument.—Intent of person executing writing is to be gathered from entire contents of instrument which should be construed accordingly.

2. Contracts—Words Employed in Writing to be Given Usual Signi_ ficance Unless Contrary Intention Appears.—In construing writing, words employed therein are to be given their usual and ordinary significance unless there is something in context thereof to deflect from that meaning indicating a modification or qualification thereof.

3. Contracts—Doubtful Language Read and Considered in Light of Circumstances Surrounding Execution.—Doubtful language of writing should be read and considered in light of circumstances and conditions surrounding maker at time he executed writing.

4. Deeds—Wills—Conveyance or Devise to "Wife and Children" Presumed One to Wife for Life with Remainder to Her and Grantor's or Testator's Children.—Conveyance or devise by a man to his "wife and children" will be presumed in absence of language indicating contrary purpose to be to wife for life, with remainder to her and grantor's or testator's children.

5. Deeds—Trust Deed for Benefit of Wife and "Issue," Held for Benefit of Wife's Issue by Settlor Only.—Provision of trust deed that trust was for benefit of settlor's wife while she lived and then to her "issue" in equal shares, though broad enough to include any issue which wife might have by some future husband, held intended to be confined to her issue by settlor.

6. Trusts—Where Only Possible Contingent Taker Conveyed His Interest in Trust to Life Beneficiary, Trust Properly Terminated. —Where only possible future contingent taker inherited posibility of reverter under trust deed and conveyed his interest therein to life beneficiary, life beneficiary became absolute owner of trust property, and trust was properly decreed terminated.

R. J. FOGG for appellants.

S. S. YANTIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

W. F. Lillard died intestate on November 25, 1918, a resident of Anderson county. He left surviving him the appellees, Louise P. Lillard his widow, and Parlin Lillard his only child who is now over the age of 21 years

but who was only about 18 years old at the time of his father's death, and was about nine years of age at the time of the execution of the trust deed, the correct interpretation of which is the subject matter of this litigation. On April 28, 1909, the decedent owned a valuable farm and considerable personal property, but he was largely in debt, his chief creditor being his father-in-law, A. J. Parlin, who resided in Cincinnati, Ohio. On that day and while he was yet a comparatively young man and in perfect health, so far as the record shows, he conveyed all his property to his father-in-law in trust for specific purposes therein enumerated, which were (1), the payment of his debts, including the one owed to his trustee, and (2), "for the exclusive use and benefit of Louise P. Lillard and her child now living, being Parlin Lillard, and for the use and benefit of any issue that the said Louise P. Lillard may hereafter have, the benefits to be for said Louise P. Lillard while she lives and then to her issue in equal shares." It was further provided therein that if "the said Louise P. Lillard should die and her said child should die, and neither shall leave issue, then the estate conveyed herein shall revert to the grantor herein, his heirs and assigns," which applied only to the surplus of the trust estate over and above that which was necessary for the payment of the settlor's debts.

The trustee was empowered to sell and convert the property into cash with which to liquidate the debts. There was not enough personalty for that purpose and he obtained the advice of the chancellor to sell the real estate, which was done under a judgment properly rendered, and of the proceeds there was left after the payment of all the debts something like $12,000.00. That judgment, as well as the sale thereunder, was obtained and had after the settlor's death; and after his son became twenty-one years of age he executed a deed to his mother conveying, releasing and relinquishing all of his interest in and to any portion of the trust fund. Following the execution of that deed the widow brought this equity action against the trustee and her son to terminate the trust and for a decree adjudging her the sole and absolute owner of the property, upon the ground that the conveyance by her son to her vested her with the absolute title thereto, free from any future contingent interest in any issue, either born or unborn, and that the trust was no longer an active but solely a dry one. The trustee answered denying that contention and insisted that a

correct interpretation of the trust deed vested a contingent future interest in any issue which the wife might thereafter have by any other husband whom she might marry and because of that fact the trust was still active and should not be terminated. Plaintiff's demurrer filed to that answer was sustained by the court and the trustee declined to plead further; whereupon judgment was rendered according to the prayer of the petition, and complaining of it the trustee prosecutes this appeal. It will, therefore, be seen that the sole question for determination is the true and correct interpretation of the future limiting clauses in the trust deed as to the persons included in the class of contingent remaindermen (the wife's issue) under the language designating them as employed by the settlor in the trust deed.

It will not be necessary for us to refer to authorities or former opinions of this or any other court to the effect that the primary and guiding rule of courts in the construction of any executed writing is to ascertain from its entire contents the intention and purpose of the one who executed it, and to construe it according to that intention. That rule of construction is everywhere acknowledged and universally applied. It is equally as well settled that in applying that rule the words employed in the writing are to be given their usual and ordinary significance, unless there is something found somewhere in the context to deflect from that meaning, and indicating a modification or qualification of it, either by enlargement or curtailment, and if such modifying or qualifying language is found, then it is the duty of the court to decree the interpretation accordingly, upon the ground that such modified or qualified meaning was intended to be attached to the language by the maker of the writing. As applied to wills, we may cite only one of the recent cases from this court, which is that of Prather v. Watson, 187 Ky. 709, and as applied to deeds we may cite only the cases of Bowe v. Richmond, 109 S. W. (Ky.) 359, and American National Bank v. Madison, 144 Ky. 152. The opinion in the latter case, quoting from the one in the Bowe case, in endorsing and applying the above rule, said: "We know of no better rule of construction than that announced by Judge Kent in Jackson v. Meyers, 3 Johns (N. Y.) 388, 3 Am. Dec. 504: 'The intent, when apparent and not repugnant to any rule of law, will control technical terms; for the intent and not the words is the essence of every agreement. In the exposition of

deeds the construction must be upon the view and comparison of the whole instrument, and with the endeavor to give every part of it meaning and effect.' " If a consideration of all the language employed by the maker of the instrument raises a doubt as to his true intention, then resort may be had to other assisting, aiding and collateral rules for the purpose of resolving that doubt, which is also a well beaten path for a court to travel in its task of interpreting and construing written instruments.

One of the latter class of rules is that the doubtful language should be read and considered in the light of the circumstances and conditions surrounding the maker at the time he executed the writing, which rule is thus expressed in the American National Bank case, *supra*: "The intention is gathered from the language or words of the writing, and this language should always be read in the light of attending circumstances and the relation of the parties to the contract;" and from that consideration the rule prevailing in this state that a conveyance or a devise by a man to his "wife and children" will be presumed in the absence of language indicating a contrary purpose as one to the wife for life with remainder to her and the grantor's or testator's children, upon the ground that to give her an absolute interest in any part of the conveyed property would eventually result in its possible transmission to the heirs of the wife other than her children *by the grantor* or testator, and which result will not be presumed as intended by him; and so, in the case of Davis v. Hardin, 80 Ky. 672, this court, speaking through Judge Cofer, said: "But when a husband makes a conveyance to his wife and *their* children, there is less reason to suppose that he intended they should take as joint tenants, whereby his bounty may, by her death, pass into the hands of a stranger, even as against himself." And again "But it would be unnatural to suppose that he intended to invest her with an estate which might pass from her to strangers to his blood." That same consideration, influencing the court's interpretation, was advanced in the later case of Frank v. Unz, 91 Ky. 621, and we know of no case since then rejecting it.

With the above rules for our guidance, we will now proceed to determine the true intention of the settlor, Lillard, in the use of the language he employed in his trust deed in designating the contingent remaindermen who should take his property after the death of his wife

leaving issue, *i. e.,* whether he intended to include in the word "issue" any issue that might be born to his wife by another husband, or did he intend to confine that term to *his* issue then living (his son) by her, or any other issue she might have by him before his death or that might have been begotten before his death and thereafter born. In other words, did he intend to confine the class of future takers to *his* issue *only* and to exclude any of his wife's issue not begotten by him?

Were we to look alone to the words, "for the use and benefit of any issue that the said Louise P. Lillard may hereafter have, the benefit to be for the said Louise P. Lillard while she lives and then to her issue in equal shares," there could be but little doubt that the language is broad enough to include any issue which his wife might have in the future whether begotten by him or by some future husband, and no doubt if the last quoted language was all that the deed contained bearing on the settlor's intention, such construction would necessarily follow. But, under the first and primary rule of interpretation above stated, we are required to look to all parts of the deed under consideration, and in doing so we find that at its beginning, in reciting the consideration for its execution, the settlor says: "That for and in consideration of one dollar cash and in consideration of love and affection *for the beneficiaries herein named,* and in order to secure the benefits of my estate to the said beneficiaries," etc., which language expressly says that one of the moving considerations for the execution of the trust deed by the settlor was the *love and affection* he had for the beneficiaries thereinafter named, and "to secure the benefits of my estate to the said beneficiaries," *i. e.,* beneficiaries for whom he entertained natural love and affection. To construe the deed as including all future issue that might be born to his widow although begotten by another husband, would render his expressed affectionate purpose as a consideration for the execution of the deed of no application or force whatever, since it could scarcely be presumed that he would entertain such love and affection for such future issue of his wife not begotten by him and who would not be related to him in any manner either by blood or marriage, and whose sire might possibly be of the most unworthy type.

The expressed affectionate consideration, to which we have referred, is sufficient, as we are convinced, to at least

raise a doubt as to the correctness of the interpretation insisted upon by appellant, although we think its effect is more far-reaching than that. But if we should confine its effect only to the production of doubt, we are then confronted by another rule to which we have hereinbefore referred to the effect that the "attending circumstances and the relation of the parties to the contract" may be looked to in order to resolve that doubt. One of the attending circumstances was that in the caption of the deed Louise P. Lillard is referred to by her husband as "his wife," and it would not require a very great stretch of the imagination to conclude that he meant, when he referred to her issue, such issue which she might have *as his wife* and not such as she might have as the *wife of some other person*. But again, under the same rule, we must interpret the language in case of a doubt in the light of "the relation of the parties to the contract." The settlor had, at the time of executing the trust deed, only one child. Both himself and his wife were yet comparatively young and healthy, and there was more than a mere probability that there would be future born children as the result of their marriage, and he was, therefore, careful to provide for any such if they should be born and for whom he would entertain *love and affection,* and who would be the issue of "his wife," for if she should marry some future husband she would no longer be his wife, but the wife of that husband.

It is, therefore, our conclusion that the actual intention of the testator as manifested by the *entire* language of his deed, viewed in the light of the surrounding circumstances and the relation of the parties, was to confine the class of future and contingent takers of his conveyed property to the issue of his wife by him, and that there being only one child as a result of that marriage, the appellee, Parlin Lillard, he inherited from his father at the latter's death the possibility of revertor created by the trust deed (Bourbon Agricultural Bank & Trust Co., Guardian, etc. v. Miller, 205 Ky. 297), and that his conveyance to his mother vested her with the absolute title to the property. She is, therefore, the sole equitable owner of it with the purposes of the trust accomplished, which renders it nothing but a dry one, and the chancellor did not err in decreeing its termination and in adjudging the widow the owner of the property freed from

the encumbrance of the trust, her absolute ownership being created by the deed that her son executed to her.

Wherefore, the judgment is affirmed. Whole court sitting.