# Ely et al. v. United States Coal & Coke Company et al.

(Decided January 12, 1932.)

726

WILLIAM LEWIS and A. C. LEWIS and H. M. BROCK for appellants.

SAMPSON & SAMPSON, J. S. FORESTER, J. & F. JENKINS, CHARLES G. MIDDLETON, and CRAWFORD, MIDDLETON, MILNER & SEELBACH, for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

This litigation arises out of conflicting claims of respective parties to title to certain lands on Poor fork of Cumberland river in Harlan county. Primarily, the rights of the parties must depend upon the construction to be given to a deed executed by J. H. Coldiron and wife on January 26, 1899, since to adopt the construction contended for by appellees would result in a final determination of the case. So far as pertinent, the deed provides:

"This indenture made and entered into the 26th day of Jan., 1899, by and between J. H. Coldiron and Nancy, his wife, parties of the first part and Mary Day, wife of J. E. Day, and the heirs of her body begotten, parties of the second part.

"Witnesseth: That for and on consideration of the love and affection which the first parties have for their daughter the said Mary Day and for the heirs of her body begotten, their grandchildren . . . said first parties have this day bargained and sold and by these presents do hereby convey unto the said second parties . . .

"To have and to hold the same, together with its appurtenances thereunto belonging to the said second parties, their heirs and assigns forever with covenants of special warranty.

"Excepting however, that the said first parties reserve to themselves the right to retain and hold

the possession of all the improved lands thereon during their natural lives with the free right to use any and all timber from said lands necessary for domestic use and such as may be necessary to keep up the farm and except such poplar trees standing thereon measuring six feet and upwards in circumference 3 feet from the ground.''

On January 29, 1901, J. H. Coldiron and wife executed and delivered to Mary Day another deed whereby they conveyed to her all their right, title, and interest in and to the land covered by the former conveyance. In this deed, reference is made to the former conveyance, and to the exceptions and reservations therein contained, and it is recited that the grantee had contracted to sell the land to John S. Wentz and Mary D. Wentz, but that the prospective purchasers were unwilling to accept a conveyance unless the grantors released all their interest in the land proposed to be conveyed.

Thereafter on January 30, 1901, Mary Day and her husband, J. E. Day, conveyed to J. S. Wentz and Mary Wentz a tract containing 225.70 acres which is referred to as the same tract conveyed to Mary Day by J. H. Coldiron and wife by deed dated January 26, 1899. Evidently before this conveyance a survey had been made, as this deed contains a complete description of the land by courses and distances, whereas in the original deed it is described as containing 150 acres more or less and the boundary as given calls to run with abutting owners and with the river.

On August 23, 1901, J. S. Wentz and Mary D. Wentz filed an equitable action in the Harlan circuit court against Sarah Elizabeth Day, Fannie Day, Willie Taylor Day, James Preston Day, Gordon Prentis Day, Joseph Day, Jr., Hattie May Day, and Bonnie Mariah Day, children of Mary Day and J. E. Day, and in their petition refer to their deed from Mary Day and her husband dated January 30, 1901, but describe the land in the petition as a certain tract lying in Harlan county on the north side of Looney ridge on the Poor fork of Cumberland river containing 225.70 acres and refer to the deed book and page where the deed is recorded. Reference is also made to the deed from J. H. Coldiron and wife to Mary Day and to the book and page where same is recorded. Both deeds referred to are filed as exhibits.

The petition alleges that under the common law the deed from Coldiron and wife to Mary Day vested in her a fee tail to said land, but that under the statutes of Kentucky, it vested in her an absolute fee simple estate; that the children of Mary Day claim that they are entitled to the remainder after the death of Mary Day; that this claim constitutes a cloud upon the title and impairs the vendible value and will continue to do so until the title thereto is quieted by judgment of the court. The ages of the defendants as given in the petition range from one to fourteen years. It is further alleged that they are nonresidents of the state of Kentucky and have been absent therefrom for four months, residing with their father and mother in Big Stone Gap, Va.

The prayer of the petition asks that the cloud upon plaintiffs' title be removed and the defendants be enjoined from asserting any title to the land by virtue of the deed from Coldiron and wife to Mary Day.

The plaintiffs being nonresidents of the state, the petition was verified by their attorney, and on the date of the filing thereof the clerk of the Harlan circuit court made a warning order for the defendants and appointed George C. Brock, a practicing attorney of that bar, to correspond with them.

On the 11th day of November, 1901, plaintiffs filed an amended petition giving the same description of the land in controversy as that contained in the deed from Coldiron and wife to Mary Day and children, which likewise was verified by their attorney. The nonresident attorney filed a report in which he stated that he had written a letter to the defendants and had mailed same addressed to their father, J. E. Day, but had received no reply from them. There is no showing that the depositions were taken pursuant to any notice, but it does appear that the warning order attorney was present and cross-examined the witnesses.

On November 13, 1901, judgment was entered granting to plaintiffs the relief sought and adjudging that the deed from J. H. Coldiron and wife to Mary Day vested in her an estate in fee simple.

On January 28, 1924, Elizabeth Ely, nee Elizabeth Day, and the other children of Mary Day, some of whom were born subsequent to the entry of the judgment hereinbefore referred to, instituted this action in the Harlan circuit court against the United States Coal & Coke Com-

pany, Jessie Jenkins, and Finley Jenkins, and in their petition alleged that by the deed dated January 26, 1899, J. H. Coldiron and wife conveyed to Mary Day a life estate in the land described in the petition and that she took no other interest therein, but that plaintiffs took the remainder therein in fee. The petition also recites the other conveyance hereinbefore mentioned and alleges that J. S. and Mary D. Wentz sold the land in controversy and undertook to convey a fee-simple title thereto; that by mesne conveyance and by regular devolution of title this property had come into the possession of the defendants, but that they acquired no other or greater interest therein by reason of said conveyance or either of them than a life estate which will terminate at the death of their mother Mary Day. It is further alleged that the defendants are claiming to be the absolute owners in fee thereof and that their claims are casting a cloud upon plaintiffs' title to remainder in fee, and will continue to do so until removed by judgment of the court.

In a second paragraph it is alleged that defendants have committed waste upon the land in controversy by cutting and removing valuable timber and by mining and removing therefrom large quantities of coal, and will continue to do so until prevented by order of the court.

The prayer of the petition is that plaintiffs be adjudged the absolute owners of the remainder in fee and that their title thereto be quieted against claims of the defendants and that the defendants be adjudged to own only a life estate subject to be terminated by the death of Mary Day and for damages from the waste committed.

By amended petitions plaintiffs give the correct names of all children of Mary and J. E. Day born before and after the execution of the deed of January 26, 1899, and allege that one of the children, a son, died in infancy and that his share in the land descended to his mother, and makes her a party plaintiff. It is alleged that the father, J. E. Day, died prior to the death of the infant son. Plaintiffs also more specifically allege the acts of waste committed by defendants.

By separate answer as amended the United States Coal & Coke Company controverted the allegeations of the petition and in separate paragraphs affirmatively alleged that it had been in the open, actual, and adverse possession of certain portions of the land in controversy

for more than 15 years and that it was the owner of the fee in these lands by record title as a remote vendee of Mary Day and her husband. It also sets up the proceedings and judgment in the case of John and Mary D. Wentz against plaintiffs and pleaded and relied upon this proceeding and judgment and upon the 15-year statute of limitations as a bar to plaintiff's right of action or recovery.

The issues were completed by reply controverting the affirmative allegations of the separate answer of the United States Coke & Coal Company and alleging that the judgment relied upon in the answer was void because of certain enumerated errors and defects in the proceedings and because it was procured by conspiracy and fraud.

The court overruled the demurrer to the third paragraph of the separate answer of the United State Coal & Coke Company and also overruled this demurrer as extended to the separate answers of Jessie and Finley Jenkins.

The third paragraph of the answer of the United State Coal & Coke Company sets up and relies upon proceeding and judgment in the case of J. S. and Mary D. Wentz against plaintiffs as a bar to their right of action or recovery, and we assume that the separate answer of Jessie and Finley Jenkins is the same as that of their codefendant, however, for some reason their answer does not appear in the record.

The court sustained a demurrer of the United States Coal & Coke Company, to the third paragraph of the reply to its separate answer. In the judgment it is recited that by agreement of parties, plaintiffs' reply to the separate answer of the United States Coal & Coke Company be treated and considered as the reply of plaintiffs to the separate answer of the defendants Jessie and Finley Jenkins and that the demurrer of said defendants to the petition be extended to the reply and each and every paragraph thereof, whereupon the cause was submitted upon the demurrer of Jessie and Finley Jenkins to the third paragraph of the reply and same was sustained by the court, and, plaintiffs declining to further plead, it was adjudged that their petition as amended be dismissed. They have appealed.

Appellants are asserting that the deed from J. H. Coldiron and wife dated January 26, 1899, vested in

Mary Day an estate for life in the land conveyed with the remainder in fee to her children, while, on the other hand, appellees urge that it created in her an estate which in former times would have been deemed an entailed estate, but which under section 2343 of our statute is converted into an estate in fee simple.

The nature of the estate which the grantor intended to and did convey must be determined, if possible, from the language of the instrument itself when considered as a whole. But when the intent is not apparent and cannot be so determined, then resort may be had to general rules of construction.

A correct determination of the question presented here is made to depend upon a proper interpretation or construction of the words "the heirs of her body begotten" as used in the deed under consideration; that is, whether they are words of limitation used in the technical sence of lineal descendants or heirs to the remotest degree, or whether they are words of purchase and used in the more restricted sense indicating a definite individual or class, as the children of the first grantee and grandchildren of grantors.

The words "heirs of the body," "bodily heirs," and equivalent or similar expressions are appropriate words to create an estate tail, and are generally so construed unless a different purpose appears by other express words or by necessary and reasonable inference. On the other hand, the word "children" or other words equivalent thereto or used in the same sense are inappropriate to create such an estate. Brann v. Elzey, 83 Ky. 440.

If these words were used in the technical sense as indicative of lineal descendants, posterity, or heirs, then the deed invested Mary Day with a fee-simple estate in the land conveyed. Ky. Stats., sec. 2343; True v. Nicholls, 2 Duv. (63 Ky.) 547; Johnson v. Johnson, 2 Metc. (59 Ky.) 331; Ruby v. Ruby. 15 S. W. 659, 12 Ky. Law Rep. 879; Pelphrey v. Williams, 142 Ky. 485, 134 S. W. 884; Hughes v. Collins, 197 Ky. 589, 247 S. W. 737; Williams v. Ohio Valley Banking & Trust Co., 205 Ky. 807, 266 S. W. 670; Lilly v. Cox, 225 Ky. 355, 9 S. W. (2d) 49. Or if the meaning of the words was doubtful and obscure and it could not clearly be determined what estate the grantor intended to convey, then it would be the duty of the court to adopt that construction favoring a fee. Ky. Stats., sec. 2342; Edwards v. Cave, 150 Ky. 272, 150 S. W. 369; Dotson v. Kentland Coal & Coke Co., 150 Ky.

60, 150 S. W. 6; Denney v. Crabtree, 194 Ky. 185, 238 S. W. 398; Fairchild v. Fairchild, 237 Ky. 700, 36 S. W. (2d) 337. If, however, upon an examination of the entire instrument it clearly appears that grantor by these words meant to designate the children of his daughter, then the construction contended for by appellants must be adopted. Righter v. Forrester, 64 Ky. (1 Bush) 278; Virginia Iron, Coal & Coke Co. v. Dye, 146 Ky. 519, 142 S. W. 1057; Howard v. Sebastion, 143 Ky. 237, 136 S. W. 226; Scott v. Scott, 172 Ky. 658, 190 S. W. 143; McFarland v. Hatchett, 118 Ky. 423, 80 S. W. 1185, 26 Ky. Law Rep. 276; Sower v. Lillard, 207 Ky. 283, 269 S. W. 330; Hatcher v. Pruitt, 231 Ky. 731, 22 S. W. (2d) 133.

A doubtful or strained construction is not necessary to determine the class into which this case falls. When the "heirs of her body begotten" are referred to as the grandchildren of the grantors no room is left for doubt or cavil. But in further confirmation of the intent and purpose of the grantors, the deed in caption, granting, and habendum clauses refers to grantees as "parties of the second part" or "said second parties." The grandchildren of grantors begotten of the body of Mary Day could mean none other than her children. There is no escape from the conclusion that this deed conveyed to Mary Day an estate for life with remainder in fee to her children.

The question remaining is whether the matters involved and the rights attempted to be asserted here are res adjudicata; that is, whether the same parties or their privies are attempting to relitigate matters involved and adjudicated in the former action of Wentz v. Day to which reference has been made. Unquestionably there is identity or privity of parties and the same conflicting and antagonistic claims of title are presented for the court's determination. Hence, if the judgment entered in that action is valid, plaintiffs are thereby precluded, but if void it is subject to attack in a collateral proceeding. Plaintiffs' counsel attack the judgment as void on a number of grounds, but the conclusion we have reached renders is unnecessary to give consideration to but one of the grounds urged; however, here we might add that most of the grounds assigned by appellants would render the judgment merely erroneous and their remedy would be by appeal or by an action of a different nature authorized by the Civil Code.

All of the defendants were infants and nonresidents of the state. It appears from the report of the warning order attorney that he wrote to them concerning the action, but that he addressed the letter or letters to their father. The Code provision for bringing nonresidents before a court places infants and adults upon the same plane and requires that the warning order attorney shall notify the defendant by writing of the pendency and nature of the action (Civil Code of Practice, sec. 57 et seq.).

It is essential to the validity of a judgment affecting a defendant's rights that he have notice, actual or constructive. There is, however, practical unanimity of authority that irregularities in giving notice will not avoid a judgment. We do not have here a question of irregular or defective notice, since there is an absolute want of notice shown by the record of the proceeding in which the judgment relied upon was obtained.

A judgment entered without service upon defendants in some method required by law is void and may be attacked collaterally. Anderson v. Hawhe, 115 Ill. 33, 3 N. E. 566; Penobscot R. Co. v. Weeks, 52 Me. 456; Dent v. Investors' Sec. Ass'n, 300 Mo. 552, 254 S. W. 1080; McMenamy Inv. & Real Estate Co. v. Stilwell Catering Co., 267 Mo. 340, 184 S. W. 467; Davis v. Reaves, 75 Tenn. (7 Lea) 585; 15 R. C. L. 848, 849; 33 C. J. 1079-1081 and cases cited. Duval v. Johnson, 90 Neb. 503, 133 N. W. 1125, Ann. Cas. 1913B, 26 and notes.

The presumption that the attorney for the nonresidents performed the duties required of him by law cannot be indulged here, since the report filed by him discloses that he failed in the performance of his duties. A letter directed to the father, mother, or person having custody of the infant defendant is not required by the Code, nor does such notice meet the requirements of the law. Cohen v. Portland Lodge, No. 142, B. P. O. E. (C. C. A.), 152 F. 357.

Having reached the conclusions that the defendants were not before the court, it follows that the judgment is void and the court erred in sustaining the demurrers to the third paragraph of plaintiffs' replies and in dismissing their petition upon their failure to further plead.

Other questions are reserved.

Judgment reversed for proceedings consistent with this opinion.