## Whittaker et al. v. Fitzpatrick.

(Decided Feb. 26, 1937.)

HILL & HOBSON for appellants.

C. P. STEPHENS for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellants are P. H. Whittaker, individually, and Ruth and Vernon Whittaker, infants, suing by their father Frank E. Whittaker, statutory guardian. They are the children of Nora Fitzpatrick Whittaker, deceased, a daughter of Stephen H. Fitzpatrick appellee,

and grandchild of testator, a clause of whose will is before us for construction.

On October 26, 1894, Henry C. Fitzpatrick, father of appellee, executed his will. He died prior to April 1, 1895, leaving a number of children to whom devises of real estate were made, apparently equal except as regards one or two to whom he had made advancements. The title to that portion of the real estate passing under the first clause of the will is in controversy here.

The petition filed by plaintiffs below shows such facts as are above stated, and quoting portions of the will it is asserted that the testator thereby devised to his son Stephen a life estate with remainder to his children. It is not alleged in the petition that appellee has been in actual possession of the land devised under clause 1 of the will, but that appellee without right or authority, has leased the lands to an operating gas corporation and for the past twelve years has been wrongfully collecting and withholding rents and royalties; that during all the times mentioned he has been, and is now, claiming to be the owner in fee of the tract of 300 acres. In their petition the appellants called upon appellee and the leasing company for an accounting, but chiefly sought to have their alleged title quieted.

At the time of the institution of the suit appellee was living, but he has since died. It also appears that Nora Fitzpatrick Whittaker is deceased, the date of her death not being given, but occurring prior to the death of her father.

Appellee filed demurrer to the petition which was overruled, whereupon he answered, denying the allegations of the petition and affirmatively alleging that under the terms of the will, upon the death of his father he took a vested fee in the land devised under clause 1, and had the full power of disposal, consequently the power to rent and lease and to take to himself the proceeds thereof. It is also alleged by answer that since the mother of appellants died prior to appellees' death, she was never seized of any interest in the land, nor could she become seized until after the death of appellee; such being the case, her children acquired no right, title, or interest.

There was no demurrer filed to appellee's answer, but at a later date the court set aside the order overrul-

ing the demurrer to the petition; on the same date reconsidered the demurrer and sustained it. The plaintiffs declined to plead further and the cause was stricken from the docket. From this order the appeal is prosecuted.

We are not so much concerned with the procedure adopted by the court, since the petition and demurrer thereto properly raise the issue as to the correct interpretation of so much of testator's will as is here involved, and which reads:

"Henry C. Fitzpatrick, being of sound mind and disposing memory do make and publish this as my last will and testament. I will and bequeath to my son Stephens Fitzpatrick and the heirs of his body free from any debt or liability which my said son now owes or may hereafter owe, the farm where he now lives, and known as the old Stephens Hamilton farm or so much of it as it embraced in the following boundary: * * *

"In making this disposition of my property it has been my purpose and intention to secure to each one of my living children a home for themselves and their families to be free from any debt, contract or liability which any of my said children may have created or may hereafter create or incur and which will at the death of each pass free and unencumbered to their children."

Reverting for the moment to the petition, it is shown that appellee had eleven children, including the mother of appellants. These children of Nora Whittaker are seeking to be declared the owners in remainder of an undivided one-eleventh interest in the land devised by the first clause of the will.

It is argued in brief that the use of the expression, "I will to my son Stephens Fitzpatrick and the heirs of his body," creates an estate tail, which under our statute (Ky. Stats. sec. 2343) is converted into a fee-simple estate. If this were the only portion of the will subject to consideration, appellee's position would have much weight according to numerous decisions of this court. The main case relied on by appellee is Simons v. Bowers, 258 Ky. 755, 81 S. W. (2d) 604, which is clear and concise on the point. However, it will be noted that there was nothing found in the document there in question which would remotely indicate any intention

on the part of the testator to employ the words "bodily heirs" in other than their technical sense. The main question was whether or not oral testimony was properly admissible to explain away the meaning of the words used. A review of other cases cited in support of appellee's contention shows that there was absent from the documents surveyed language which would tend to indicate a different intention than as was expressed by the technical words. Martin v. Martin, 203 Ky. 712, 262 S. W. 1091; Lawrence v. Carrithers, 140 Ky. 6, 130 S. W. 786; Prather v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532; Meisberg v. Bryant, 184 Ky. 600, 212 S. W. 600; Brown v. Blackwell, 178 Ky. 797, 200 S. W. 13, and cases cited.

We approach the question here fully cognizant of the application of the rules of construction adopted and applied, when no words or expressions have been found which would import intent on the part of the testator to employ such words or expressions otherwise than in their primary sense  But we are not limited in determining purpose and intent, to consideration of a word, words, or a sentence, but must survey the entire document. In Prather v. Watson's Ex'r, 187 Ky. 709, 712, 220 S. W. 532, we laid down the rule of construction as applied to wills and deeds, to which reference is made, cases cited therein, and the following: Wintuska v. Peart, 237 Ky. 666, 36 S. W. (2d) 50; Spicer v. Spicer, 177 Ky. 400, 197 S. W. 959; Harkness v. Meade, 148 Ky. 565, 147 S. W. 10.

Having in mind this well-established and approved rule, we look to the entire document in order to ascertain whether it was the intention of the writer, as manifested by the writing, to limit the devise in clause 1 of his will. The pertinent question is whether the above-quoted words, as used, are words of limitation used in the technical sense of lineal descendants or heirs to the remotest degree, or whether they are words of purchase and used in the more restricted sense indicating a definite individual or class, as the children of the first grantee and grandchildren of grantors. Ely v. United States Coal & Coke Co., 243 Ky. 725, 731, 49 S. W. (2d) 1021, 1022, 1024. This opinion, with the numerous citations therein, is applicable to the case here. We said in that case:

"A doubtful or strained construction is not neces-

sary to determine the class into which this case falls. When the 'heirs of her body begotten' are referred to as the grandchildren of the grantors, no room is left for doubt or cavil."

In that case will be found a fair summarization—reviewing numerous cases—of the rules for determining just when and where the words "bodily heirs" and like words are to be given their technical meaning, and the rule to be applied where there is obscurity or ambiguity; again where on examination of the instrument it appears that grantor, though using technical words, showed an intention that they should not receive a technical application. On page 732 of 243 Ky., on page 1024 of 49 S. W. (2d), the opinions referred to above, will be found a list of the latter class to which reference is made, and to which may be added Faulkner's Guardian v. Faulkner, 237 Ky. 147, 149, 35 S. W. (2d) 6; Banzhoff v. Smith, 233 Ky. 737, 26 S. W. (2d) 1034; Ratliffe v. Ratliffe, 182 Ky. 230, 206 S. W. 478. These cases following the rule of construction stated, supra, give us answer to the contention here, it being perhaps more definitely shown here that testator intended to limit the estate devised to his son to a life estate only, there being more than "necessary inference" by the use of "express words." Ky. Stats. sec. 2343.

The testator had seven children, and to each of them he made a devise of land, in each instance using language similar to that in the devise to Stephen. All of his personal estate was devised to his widow, with a further provision that each of his sons should pay her $25 per year. There were several codicils to the will, none of which except the one hereinafter referred to has any bearing on the question presented. It is noted upon an inspection of the entire will that all the devises to sons and daughters, made as above indicated, were in clauses 1 to 7. After all these and the devise to the wife were completed he wrote:

"In making this disposition of my property it. is my purpose and intention to secure to each one of my living children a home for themselves and families to be free from any debt, contract or liability which any of my children may have created or may hereafter create or incur, and which will at the death of each one pass free and unincumbered to their children."

Nothing could be clearer than that the testator used the words "heirs of the body" in the sense of children  It may be that he did not know the primary or technical meaning of the legal words used. Whether. he did or not, or whether after using the words quoted he recognized their effect and desired to alter their effect or meaning, he most assuredly expressed both "purpose" and "intention," first, to secure to each of his living children "a home for themselves and families," and "which will at the death of each one pass free and unincumbered to their children."

As a further aid in arriving at testator's intention that the children of Stephen Fitzpatrick should take the estate after his death, it is noted in codicil No. 1 that the testator made a small devise to a daughter by a former marriage, and declared that she was not to have any interest in said land (devised to Stephen) or any other property which he gave to his descendants.  To our minds this clearly shows a purpose and intention that the children of Stephen, by the then existing marriage, should "take, inherit, have and possess" interest in the tract of land, which might or might not have happened if Stephen had taken the fee.

The testator was careful in disposing of his property so that there should be no inequality either among the children or between children and grandchildren. One daughter had died leaving three grandchildren.  Testator directed that certain described lands be sold, a portion of the proceeds to be used in paying his debts, and a sum invested in real estate to be conveyed to the grandchildren.

Having concluded that the devise to Stephen was a life estate only, and that his children became vested at his death, it remains only to determine if these appellants, grandchildren of Stephen, should take such a portion of the estate devised under the testator's will as would have passed to their mother if she were living. The determination of this question does not depend alone upon the meaning of the technical words as used in the first portion of the will, but upon the interpretation of the words "child or children," and in arriving at a correct conclusion, following the rule of interpretation above announced, we must again ascertain the purpose and intention by reading the entire instrument. Hodge v. Lovell's Trustee, 262 Ky. 509, 90 S. W. (2d)

683, 685; Goosling v. Pinson, 198 Ky. 57, 248 S. W. 248; Ely v. United States Coal & Coke Co., supra. In the Hodge Case it was held that under numerous decisions of our court, the words "child or children" are to be construed to mean and include grandchildren, when a reading of the will justified such conclusion, or when otherwise the testator's will would be inoperative in part, or when the statutory law requires such construction.

The Hodge Case, supra, cites and to some extent relies on Tucker v. Tucker, 259 Ky. 361, 82 S. W. (2d) 458. In the Hodge Case the language used in the devise was to "their bodily heirs"; in the Tucker Case, "the issue of her body," the remainder "to any child or children she may leave." In the Hodge Case the remainder was to the "children the issue of her body." In each case we held the words "child or children" to mean grandchildren, and in the last-named case wrote as follows:

> "At common law the import of the term 'children' used as descriptive of persons to take under a will could be enlarged so as to embrace grandchildren [1] from necessity, where the will would be otherwise inoperative, and [2] where the context of the instrument as a whole indicated that the testator did not intend to use the term 'children' in its restricted meaning but in a broader sense, and this rule of construction prevailed in this state previous to statutory regulation on the subject. Kentucky Statutes, secs. 2064, 4841, and 463."

See, also, Fischer v. Porter, 263 Ky. 372, 92 S. W. (2d) 368.

Section 4841, Ky. Stats., was construed by this court in Cherry v. Mitchell, 108 Ky. 1, 55 S. W. 689, 21 Ky. Law Rep. 1547, wherein construction was also given to section 463, Ky. Stats., and that interpretation approved in a number of cases, among which may be mentioned Ruff v. Baumbach, 114 Ky. 336, 70 S. W. 828, 24 Ky. Law Rep. 1167; Carter v. Carter, 208 Ky. 291, 270 S. W. 760.

Applying the rules of construction so long followed by this court, and after reviewing numerous cases in which the rules have been applied to wills similarly worded, we are of the opinion that the will in question

vested in Stephen Fitzpatrick a life estate in the described tract of land, and that upon his death the remainder, under the will, vested in his living children and the children of his deceased daughter Nora Whittaker.

The lower court sustained a demurrer to plaintiff's petition and struck the case from the docket. From what we have said it is apparent that in doing so he was in error; hence the judgment is reversed, with directions to reinstate the case, overrule the demurrer, and for further proceedings consistent herewith.